**Opinion filed October 27, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00050-CV
_____

## TEON MANAGEMENT, LLC AND REPUBLIC OIL & GAS COMPANY, Appellants

## V.

## TURQUOISE BAY CORPORATION D/B/A BAY OPERATORS ET AL., Appellees

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV45986**

## O P I N I O N   O N   M O T I O N   F O R   R E H E A R I N G

On original submission, we held that the trial court committed reversible error by failing to render a take-nothing judgment in trespass to try title against Turquoise Bay Corporation d/b/a Bay Operators et al.[1] based on Turquoise Bay's judicial admission of title in the opposing

---

[1]The plaintiffs/appellees are Turquoise Bay Corporation d/b/a Bay Operators; Gloria Ruth Johnson; Lois Fay Echols; R & C Land & Cattle Co.; Adam Praisnar; Ann Praisnar; JDJMT, Ltd.; Petroleum Growth Fund 2003, Ltd.; B & F Company; B.J. Blackstock; James P. Chonka; Preasley Cooper; Donnell Echols; First National Bank of Denver City; G. Murthy Gollapudi; Luis Gomez; Mitzi Griffith; John Holdridge; Natalie Jarrett; Ray Holdridge; Davey & Patrick Lawson; Locker Brothers Partnership; John M. Lowrance; Jackie Mitchell; James Mitchell; Myrle Mitchell Estate; Doris & Stanley Neujahr; C.E. Nipp; Martha J. Nugent; Joyce Rodriguez; Michael C. Smith; Telluride Company (Stann); Telluride Company (Wulfe); Trobaugh Properties; Daniel R. Walsh; James R. Weber; Marvin L. Wigley; Marc Hellinghausen; Sidney R. Hutchinson; and W. Olin McMillian.  For simplicity, we will collectively refer to them as Turquoise Bay.

parties. Turquoise Bay filed a motion for rehearing, claiming in part that any judicial admission it had made did not admit better title in the opposing parties sufficient to defeat its trespass to try title action. We grant the motion for rehearing, withdraw our opinion and judgment dated April 7, 2011, and substitute the following.

Turquoise Bay filed suit against Teon Management, LLC, et al.[2] seeking, among other things, a declaratory judgment that seven oil and gas leases had not terminated and that Turquoise Bay was the operator of four wells located on those leases. Teon Management and Republic Oil & Gas Company filed a counterclaim asking the court to declare that the leases had terminated and that Turquoise Bay was a bad faith trespasser. They also requested an accounting and damages. The jury answered several questions favorably for Turquoise Bay, and the trial court entered a declaratory judgment that the leases were still in effect as to specifically described lands but had otherwise terminated, that Turquoise Bay was not a trespasser but was the proper operator of three wells, and that Turquoise Bay was entitled to the suspended production payments. The trial court also awarded Turquoise Bay its attorney's fees. We affirm in part and reverse and render in part.

## I. *Background Facts*

This suit arises out of four wells drilled on lands covered by seven leases. The wells are the Nichols No. 2, the Nichols No. 3, the Elkin-Nichols Unit No. 1-1, and the Elkin-Nichols Unit No. 2-1.[3] In 2006, they were operated by McFarland & Scobey. McFarland & Scobey filed for bankruptcy on October 22, 2006, and the Texas Railroad Commission shut in all four wells on December 14, 2006. The working interest owners selected Turquoise Bay as the new operator. It commenced operations, and production resumed on March 8, 2007. Meanwhile, in February, Teon Management and Republic Oil & Gas Company secured new leases covering the four wells.

---

[2]The defendants were Teon Management, LLC; Republic Oil & Gas Company; Kynn and Jan Maxwell; Dovie Nichols; Claudia Chase; Tammy N. Dyer; Grady Lee Grantham; Glenn (Bud) Grantham; Katherine N. Grantham; Sandra N. Hodnett; Joe Hughes; Kay Long; Kathy J. Maxwell; Chad Nichols; Donald Nichols; Danny Lee Nichols; John Roy Nichols; John P. Nichols, Jr.; Mark Nichols; Jennifer Dawn McNeill; Robert Carl Nichols; Jean Parker; Charles A. Peugh; Vicky Ware; J.D. Crawford; Elkin-Kennett Properties; Francis Caldwell Elkin; Francis C. Elkin Trust; Virginia Louise Fuller; Louie G. & Evelyn Koonce; P. Bush Elkin Property Company, Ltd.; Claudia Chase; Candelero Oil & Gas Co.; Endeavor Energy Resources L.P.; Rick Reddy; Lewis Reddy Estate Trust; Isramco Energy; Lynn F. Moore Estate; and Candelero Oil & Gas, Co.

[3]We note that five of the leases contained a provision restricting the acreage that may be held by a single well and terminating the leases as to all acreage except that allocated for proration allowable purposes to a producing well.

Turquoise Bay applied with the Railroad Commission to become the operator. Teon Management contested its application. Because of the controversy, the production purchasers placed all revenue from the four wells in suspense. Turquoise Bay subsequently filed suit against Teon Management and Republic Oil & Gas Company seeking a declaratory judgment that Turquoise Bay was a valid operator and not a trespasser. Eventually, all royalty, overriding royalty, and working interest owners were joined as parties.

The jury found that Turquoise Bay timely commenced reworking operations on three wells: the Nichols No. 2, the Nichols No. 3, and the Elkin-Nichols Unit No. 1-1. The trial court did not submit an issue on the Elkin-Nichols Unit No. 2-1 well, finding as a matter of law that the leases covering that well had terminated with respect to the land allocated to it. The trial court entered a declaratory judgment holding that the leases covering the Nichols No. 2, the Nichols No. 3, and the Elkin-Nichols Unit No. 1-1 were valid as to the proration units attributable to those three wells; that two other leases were valid as to all lands covered by them; that Turquoise Bay was not a trespasser as to the three wells; and that the leases covering the proration unit attributable to the Elkin-Nichols Unit No. 2-1 well had terminated. The trial court also awarded Turquoise Bay its attorney's fees, and it authorized the purchasers to release all suspended funds to Turquoise Bay. Teon Management and Republic Oil & Gas Company filed a notice of appeal.[4] The remaining defendants did not.

## II. *Issues*

Teon Management challenges the trial court's judgment with six issues. Teon Management argues first that, because Turquoise Bay's suit was primarily one to determine title to land, it was required to file a trespass to try title action rather than a suit for declaratory judgment. In Issues Two and Five, Teon Management contends that the trial court erred by awarding attorney's fees or, alternatively, requests a remand for further consideration of their award. In Issues Three and Four, it challenges the sufficiency of the evidence to support specific jury findings. Finally, in Issue Six, Teon Management contends that it is entitled to the revenue attributable to production from the disputed interests.

## III. *Trespass to Try Title*

The first question we must address is whether it was appropriate for Turquoise Bay to prosecute this as a declaratory judgment action rather than as a trespass to try title suit. Teon

---

[4]In the remainder of this opinion, we will refer to these parties collectively as Teon Management.

Management filed special exceptions challenging the propriety of a declaratory judgment action, and it filed a motion for judgment NOV asking the court to disregard the jury's answers because Turquoise Bay failed to plead or prove a trespass to try title claim. The trial court denied both motions.

Teon Management argues that the trial court erred because this suit was one to determine title to land. Turquoise Bay responds that the suit was not, in substance, a trespass to try title action and, therefore, that a declaratory judgment action was appropriate. Both causes of action are statutory creations. TEX. PROP. CODE ANN. § 22.001(a) (West 2000) provides: "A trespass to try title action is the method of determining title to lands, tenements, or other real property." The prevailing party's remedy is title to, and possession of, the real property interest at issue. *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Conversely, TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008) allows:

> A person interested under a deed, . . . written contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of rights, status or other legal relations thereunder.

There are procedural differences between the two causes of action. One of the most important is the availability of attorney's fees. Trial courts have the authority to award attorney's fees in declaratory judgment actions. TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(a) (West 2008) (courts may award costs and reasonable and necessary attorney's fees as are equitable and just). They do not in trespass to try title suits. *See EOG Resources, Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 304 (Tex. App.—San Antonio 2007, pet. denied) (holding recovery of attorney's fees is barred in a trespass to try title action because it is not provided for in the Property Code).

Texas case law indicates that, in most cases, the proper cause of action when title is in dispute is a trespass to try title action.[5] Turquoise Bay argues that this rule is inapplicable here because the relief it sought and was awarded is significantly different from the relief available in a trespass to try title action. It notes that it received a declaratory judgment that it was the proper

---

[5] *See, e.g., Martin v Amerman*, 133 S.W.3d 262, 264 (Tex. 2004); *BP Am. Prod. Co. v. Marshall*, 288 S.W.3d 430, 453 (Tex. App.—San Antonio 2008), *rev'd on other grounds*, 342 S.W.3d 59 (Tex. 2011); *Veterans Land Bd. v. Lesley*, 281 S.W.3d 602, 627 (Tex. App.—Eastland 2009), *aff'd in part & rev'd in part on other grounds*, 2011 WL 3796568 (Tex. Aug. 26, 2011); *Natural Gas Pipeline Co. of Am. v. Pool*, 30 S.W.3d 618, 636 (Tex. App.—Amarillo 2000), *rev'd on other grounds*, 124 S.W.3d 188 (Tex. 2003); *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 684 (Tex. App.—Waco 1998, pet. denied); *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex. App.—Austin 1998, no pet.); *Bell v. State Dep't of Highways & Pub. Transp.*, 945 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1997, writ denied), *abrogated by Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004); *Barfield v. Holland*, 844 S.W.2d 759, 771 (Tex. App.—Tyler 1992, writ denied).

operator of three wells, that it was not a trespasser as to those wells, and that the purchasers were authorized to release all production payments to it. Turquoise Bay also argues that the judgment does not vest any title but merely recites that some of the leases were valid.

Turquoise Bay's argument misreads the trial court's ruling. When the trial court found that Turquoise Bay's leases were valid, the court was not resolving a question about the validity of those leases at the time of their execution or whether they were otherwise proper and enforceable. It found that those leases were still in existence. When the trial court found that Turquoise Bay was the proper operator, it was because Turquoise Bay had timely commenced reworking operations; therefore, the leases were still valid. When it found that Turquoise Bay and not Teon Management was entitled to the suspended runs, this was because Turquoise Bay's leases were still in existence. Each of these decisions is a title determination. *See Marshall*, 288 S.W.3d at 453 (case was not a proper declaratory judgment action because it did not involve the construction of a lease but whether the operator had engaged in good faith drilling or reworking operations without a sixty-day cessation and whether it had committed fraud); *Pool*, 30 S.W.3d at 636–37 (case was essentially a trespass to try title action because the suit did not involve the construction of the leases but an evidentiary determination of whether production had terminated).

Turquoise Bay contends that, nonetheless, a declaratory judgment action was appropriate because the construction of the leases' savings clause was a pervasive issue. Turquoise Bay argues, for example, that there was extensive dispute over the meaning of the phrase "operations for drilling or reworking." But, the jury charge confirms that this case, much like *Marshall* and *Pool*, was ultimately an evidentiary determination of whether Turquoise Bay's leases had expired.[6] The jury was asked:

Question No. 1[7]

Did production of oil and gas from the wells listed below cease for a period of more than sixty (60) consecutive days?

---

[6]Courts have held that a declaratory judgment is proper when a party requests the trial court to construe a deed or lease to determine if the instrument is valid and conveys the purported interest in dispute. *See, e.g., Sunwest Operating Co. v. Classic Oil & Gas, Inc.*, 143 Fed. Appx. 614, 620 (5th Cir. 2005); *Ruiz v. Stewart Mineral Corp.*, 202 S.W.3d 242, 247 (Tex. App.— Tyler 2006, pet. denied). No such questions were raised in this dispute.

[7]The charge contained separate answer blanks for each well. For clarity, that portion of the charge has been omitted. Also for clarity, the instructions that have no bearing on this appeal have been omitted. This includes the limiting instructions. We note that, because the jury answered Question No. 2 yes for all three wells, it was instructed not to answer Question No. 3. Because the jury did not answer Question No. 3, it was also instructed not to answer Question No. 4.

Question No. 2

Did Plaintiffs commence operations for reworking on the wells listed below within sixty (60) days after production of oil and gas ceased?

You are instructed that "reworking operations" means any and all actual acts, work, or operations in which an ordinarily competent operator, under the same or similar circumstances, would engage in a good faith effort to cause a well or wells to produce oil or gas in paying quantities.

Question No. 3

Was Plaintiffs' failure to commence reworking operations on or the failure to produce oil or gas from the well in question within 60 days excused by operation of force majeure, or Federal or state law or any order, rule or regulation of governmental authority?

You are instructed that effect of a force-majeure "is to excuse the lessee from non-performance of lease obligations when the non-performance is caused by circumstances beyond the reasonable control of the lessee or when non-performance is caused by an event which is unenforceable at the time the parties entered the contract."

Question No. 4

A. Did any royalty owner or owners repudiate Plaintiffs' title to the leases?

B. State the name and date of repudiation as to any royalty owner whom you have found repudiated Plaintiffs' title to the leases.

Question No. 5

With regard to Question No. 5, you are instructed that to be capable of producing oil or gas, a well must be capable of producing oil or gas in paying quantities without additional equipment or repairs.

The term paying quantities involves not only the amount of production, but also the ability to market the product at a profit. Whether there is a reasonable basis for the expectation of profitable returns from the well is the test. If the quantity be sufficient to warrant the use of the product in the market, and the income therefrom in excess of the actual marketing costs and operating costs, the production satisfies the term "in paying quantities."

In the case of a marginal well, the standard by which paying quantities is determined is whether or not under all the relevant circumstances a reasonably prudent operator for the purpose of making a profit and not for speculation, continue to operate the well in the manner in which the well was operated.

6

A. On March 12, 2007, were these wells shut-in and capable of producing only gas and not oil in paying quantities?

B. On December 14, 2006, were these wells shut-in and capable of producing only gas and not oil in paying quantities?

C. On March 12, 2007, were these wells shut-in and capable of producing oil or gas in paying quantities?

D. On December 14, 2006, were these wells shut-in and capable of producing oil or gas in paying quantities?

Question No. 6[8]

Did Plaintiffs act in good faith in producing oil or gas from the wells listed below after failing to commence drilling or reworking operations on the wells listed below within sixty (60) days after production of oil and gas ceased?

You are instructed that a person acts in good faith when that person does so with an honest and reasonable belief in the superiority of that person's title.

This charge resolved a title question. It did not resolve a lease construction dispute.

Turquoise Bay also argues that Texas courts have allowed declaratory judgment actions in very similar circumstances, and it points to decisions such as *Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143 (Tex. 2004). In that case, a lease covered two tracts and was maintained by production on only one tract. Ridge Oil, the lessee of the producing tract, shut in the wells and allowed the lease to expire. Guinn Investments was the lessee of the second tract. It filed a declaratory judgment action seeking a determination that the lease was still in effect. The supreme court affirmed a judgment for Ridge Oil, including an award of attorney's fees. 148 S.W.3d at 163. The supreme court did not mention trespass to try title claims, and there is no indication in the opinion that either side ever raised the issue. Conversely, in *Martin*, 133 S.W.3d at 264, the plaintiffs filed a declaratory judgment action over a boundary dispute, and the defendants filed a counterclaim for trespass to try title. The supreme court contrasted trespass to try title suits with declaratory judgment actions and noted that trespass to try title actions are "*the* method for determining title to real property." *Id.* at 265–67 (citing Section 22.001(a) of the Property Code).[9]

---

[8]This question was not conditioned. There are yes answers for all three wells. Those answers have been marked out and replaced with "N/A see Ques #2."

[9]The legislature has since amended TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c) (West 2008) to allow a declaratory judgment action "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties."

The two decisions appear conflicting because, although both involved title determinations, in *Martin* the court held that a trespass to try title suit was required, whereas in *Ridge Oil* it affirmed a declaratory judgment without referring to the *Martin* holding or otherwise explaining why a trespass to try title suit was not required. Other courts have held that a party waives its right to insist upon a trespass to try title action when it fails to object. *See, e.g., Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 320-21 (Tex. App.—Amarillo 2001, pet. denied). The supreme court's decisions in *Ridge Oil* and *Martin* can be reconciled using this principle. The trial court does not lose jurisdiction if a title dispute is erroneously filed as a declaratory judgment action and may properly award declaratory relief and attorney's fees if no objection is raised. Because Teon Management objected to proceeding as a declaratory judgment action and to the award of attorney's fees, that situation is not present here.

Turquoise Bay next contends that it was not required to file a trespass to try title action because its suit was more akin to a suit to remove a cloud on title. As Turquoise Bay notes, the purpose of a traditional suit to quiet title is to remove a cloud from the title created by an invalid claim. *See, e.g., Wright v. E.P. Operating Ltd. P'ship*, 978 S.W.2d 684 (Tex. App.—Eastland 1998, pet. denied) (plaintiffs filed a suit to quiet title to challenge the defendant's title to the mineral estate); *see also Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886) (a suit to quiet title lies "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right"); *Bell v. Ott*, 606 S.W.2d 942 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (the principal issue in a suit to quiet title is the existence of a cloud that equity will remove). Even if Turquoise Bay is correct and this is a suit to remove a cloud on title, that would not eliminate the need to satisfy the burden of proof required in trespass to try title suits because of the competing claims to title. *See Bell*, 606 S.W.2d at 952 ("The plaintiff is not required to trace his title to either the sovereign or to a common source with the defendant, unless, of course, that proof is necessary to establish plaintiff's superior equity and right to relief.").[10] Nor would it allow Turquoise Bay to recover attorney's fees. *Sani v. Powell*, 153 S.W.3d 736, 745 (Tex. App.—Dallas 2005, pet. denied).[11]

---

[10]One commentator has described the scariest element of a suit to quiet title as the possibility that a confused or inexperienced court will confuse it with a trespass to try title suit and will require a strict proof of title. *See* Andy Carson, *Selected Land Title Litigation Issues*, in ERNEST SMITH INSTITUTE PAPERS (1998). Carson recognizes, however, the necessity to establish title when, as suggested by *Bell*, 606 S.W.2d at 952, the plaintiff must establish a superior right to relief.

[11]*See also Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("Attorney's fees are not available in a suit to quiet title or to remove cloud on title.").

Turquoise Bay argues that this is more than a title dispute because the trial court resolved other issues, such as its entitlement to production from the four wells. The trial court explained its rationale for allowing Turquoise Bay to proceed with a declaratory judgment action as the presence of a request for a declaratory judgment that Turquoise Bay was the lawful operator. In *Martin*, the supreme court held that the case necessarily involved a question of title or else the parties would gain nothing by the judgment. 133 S.W.3d at 267. The same is true here.

The underlying dispute concerned such questions as who was the proper operator of the wells and who was entitled to the production payments, but these are merely restatements of the ultimate question: Whose leases were in effect?[12] We do not hold that questions over who is the proper operator or who is entitled to suspended runs can never be resolved in a declaratory judgment action. The dispositive question is: What is the nature of the dispute? For example, if Teon Management and Turquoise Bay's dispute over who was the proper operator required a construction of a joint operating agreement to determine if an election was properly conducted or if their dispute over suspended runs required a construction of an assignment to determine the percentage of ownership it conveyed, a declaratory judgment would be appropriate. But this case involved rival claims to the mineral estate, and every substantive issue was resolved when the trial court determined who owned the mineral estate. It was, therefore, a title determination, and Turquoise Bay should have proceeded with a trespass to try title suit. *See Veterans Land Bd.*, 281 S.W.3d at 627 (because case involved rival claims to the executive rights, a trespass to try title rather than a declaratory judgment action was proper).

We cannot hold, however, that the trial court abused its discretion in failing to sustain Teon Management's special exceptions. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 339 (Tex. App.—San Antonio 2006, pet. denied) (holding that the trial court did not abuse its discretion in overruling the defendant's special exceptions because the "declaratory judgment action can be characterized as a trespass to try title claim"). In the case at issue, the claims for declaratory relief can be characterized as claims for trespass to try title. Accordingly, we will analyze this case as a trespass to try title case. *See Ramsey v. Grizzle*, 313 S.W.3d 498, 504 (Tex. App.—Texarkana 2010, no pet.).

The plaintiff in a trespass to try title action is required to prove its title by proving (1) a regular chain of conveyances from the sovereign to the plaintiff, (2) a superior title to that of the

---

[12] In *Marshall*, 288 S.W.3d at 453, the court held that a request for an accounting did not alter the nature of the suit because it was a form of further relief that accrued because of the underlying title determination.

defendant out of a common source, (3) title by limitations, or (4) prior possession, which prior possession has not been abandoned. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). On appeal, Teon Management asserts that Turquoise Bay did not offer the necessary proof required to prove title. At trial, however, it was undisputed that Turquoise Bay was the successor in interest to the original leases and, therefore, owned the leases that were at issue; the issue that was before the jury was whether those leases had terminated. From the beginning of trial, the attorney for Teon Management informed the jury during his opening statement that, in addition to McFarland & Scobey, "there were multiple other owners who were working interest owners who were lessees, including Mr. Evans' clients [the plaintiffs]." The Teon Management owner with knowledge of the leases at issue testified at trial that "Mr. Holdridge and his group [Turquoise Bay] had majority of the current ownership of the leases for the lessees." Additionally, Turquoise Bay introduced into evidence the original leases, the joint operating agreements wherein the original lessees assigned much of their interest in the leases to the various working interest owners, the ballots from a majority of the working interest owners authorizing Turquoise Bay to operate the wells, and the authorization from the Railroad Commission for Turquoise Bay to operate the wells. At trial, the only disputed issue regarding the leases was whether they had terminated according to their own terms. *See Ramsey*, 313 S.W.3d at 505–06 (existence of lease was admitted when the parties' pleadings acknowledged its existence, the parties assumed that it had at one time been in effect, and the entire trial was to determine whether the lease had expired by its own terms).

Furthermore, it was undisputed that Turquoise Bay had prior possession of the wells.[13] "The doctrine of 'prior possession' . . . proceeds upon the theory that one in possession should not be disturbed unless it be by one having a better title." *Reiter v. Coastal States Gas Producing Co.*, 382 S.W.2d 243, 251 (Tex. 1964). A showing of prior possession gives rise to a rebuttable presumption that the plaintiff has fee title to the property; proof of possession is sufficient proof of title. *Id.* at 248–49. The defendant may rebut this presumption by showing that it has better title to the property. *Id.* at 251.

Teon Management did not show that it had better title, nor did Turquoise Bay admit that Teon Management had better title. The record shows that, prior to February 2007, the leases had

---

[13]Teon Management asserts that Turquoise Bay has waived this ground because it failed to submit a jury question on prior possession. *See Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964) (prior possession is an independent ground of recovery and is waived if there are fact questions and no jury question is submitted). Because there were no fact questions on this issue, it was not waived.

been held by production, that Turquoise Bay entered into possession of the wells in February 2007 and remained in possession at the time of trial, and that Teon Management had never been in possession of the wells. Thus, Turquoise Bay established a prima facie case and was presumed to have title. *See id.* at 248–51.

Teon Management argues on appeal that the presumption of prior possession does not apply in this case because Teon Management had title or an ownership interest, which rebutted the presumption or inference of ownership created by Turquoise Bay's prior possession. Teon Management contends that the following assertions from Turquoise Bay's live pleading rebutted the presumption of ownership arising from Turquoise Bay's prior possession: "Defendants entered into Oil, Gas, and Mineral Leases on the same lands on which the wells are located in February 2007," and "Defendants have intentionally and unlawfully interfered with the leases at issue by obtaining new leases from the Royalty Owners." Teon Management relies on *Clements v. Corbin*, 891 S.W.2d 276, 280 (Tex. App.—Corpus Christi 1994, writ denied), to support its contention. We find Teon Management's reliance upon *Clements* to be misplaced because the pleading there admitted "record title" in the opposing parties. 891 S.W.2d at 280. Turquoise Bay's pleading did not admit title in Teon Management. To the contrary, Turquoise Bay asserted that it held valid leases and that Teon Management, by entering into new leases covering the wells, interfered with Turquoise Bay's preexisting leases. Turquoise Bay did not admit that Teon Management's leases were valid or that Teon Management held any title. Turquoise Bay's pleading, at most, constituted an admission that Teon Management entered into leases with lessors who only had a possibility of reverter and, therefore, no right to possess, explore for, or produce the minerals. *See Pool*, 124 S.W.3d at 194.

In order to rebut the presumption of title arising from Turquoise Bay's possession, Teon Management had to show that the leases had terminated. This is the very issue that the trial court resolved. Turquoise Bay's undisputed possession gave rise to the presumption that it owned the leases and was entitled to possession.

We hold that Turquoise Bay met its burden in two ways: by proving a superior title and prior possession. Issues One and Six are overruled. Issue Two, regarding the unavailability of attorney's fees in a trespass to try title suit, is sustained; this holding moots Issue Five, also challenging the award of attorney's fees.

11

IV. *Failure to Timely Commence Reworking Operations and Repudiation*

In Issues Three and Four, Teon Management challenges the sufficiency of the evidence supporting the jury's finding that Turquoise Bay began reworking operations on the Nichols No. 3 within sixty days after the well ceased production. Teon Management argues that the undisputed evidence at trial showed that the Nichols No. 3 experienced two periods of cessation of production; that this second period lasted from December 8, 2007, to September 19, 2008; and that Turquoise Bay did not commence reworking operations on the well until July 24, 2008.

Turquoise Bay does not dispute the existence of this second period of cessation of production on the Nichols No. 3 or Turquoise Bay's failure to commence reworking operations within sixty days after the beginning of this period. Instead, Turquoise Bay argues that it was relieved of the obligation to timely commence reworking operations by the lessors' repudiation of the lease. The issue of repudiation was submitted to the jury but was conditioned on the jury's finding that Turquoise Bay did not commence reworking operations within sixty days of cessation of production. Because the jury found that Turquoise Bay timely commenced reworking operations, the jury did not reach the issue of repudiation.

The law is well-settled in Texas that the repudiation of a lease by a lessor relieves the lessee of any obligation to conduct any operation on the land in order to maintain the lease in force pending a judicial resolution of the controversy between the lessee and the lessor over the validity of the lease. *Kothmann v. Boley*, 308 S.W.2d 1 (Tex. 1957); *Cheyenne Res., Inc. v. Criswell*, 714 S.W.2d 103, 105 (Tex. App.—Eastland 1986, no writ). The doctrine of repudiation is a variation of the doctrine of estoppel, and it applies when the lessor has asserted a clear, unequivocal challenge to the lessee's title in and to the interest created by the lease. *Cheyenne*, 714 S.W.2d at 105. Lessors who wrongfully repudiate the lessees' title by unqualified notice that the leases have terminated cannot complain if the lessees suspend operations pending a determination of the controversy. *Kothmann*, 308 S.W.2d at 4.

As evidence of repudiation, Turquoise Bay introduced a letter that the working interest owners received on May 23, 2007, from the attorney of several lessors stating that "it is the contention of [his] clients that this lease has terminated and that Turquoise Bay Corporation d/b/a Bay Operators is a bad faith trespasser on the land, that any oil or gas which it produces and sells from the land has been converted, [and] that this is a bad faith conversion." As noted in the letter, demand had already been made on Turquoise Bay to vacate the premises. In the letter, the working interest owners were threatened with a lawsuit containing various causes of action and

were requested to sign a document releasing all of their interest in the lease. According to the letter, the lessors would not pursue the various claims against the working interest owners personally if they signed the document.

Luis Eduardo Gomez, the president of Turquoise Bay, testified that a problem with the Nichols No. 3 was originally discovered in March 2007 but that, on the advice of legal counsel, Turquoise Bay decided to "try to resolve the legal issues before [it] spent more money in this well." Turquoise Bay filed this lawsuit on May 29, 2007. Prior to the suit being resolved and in response to increasing oil prices, Turquoise Bay, nevertheless, commenced reworking operations in 2008 and spent almost $400,000 on the Nichols No. 3. As a result, the well again began producing.

As to the undisputed second period of cessation of production, which began on December 8, 2007, we hold that Turquoise Bay's failure to timely commence reworking operations was excused under the doctrine of repudiation. The evidence conclusively established that the lease through which Turquoise Bay claimed its interest in the Nichols No. 3 had been repudiated by the lessors. *See Kothmann*, 308 S.W.2d at 4; *Cheyenne*, 714 S.W.2d at 104–05. The signing of new leases with Teon Management, the demand to vacate the premises, and the letter from the lessors' attorney plainly stating that the lease "has terminated" constituted unqualified notice to Turquoise Bay of the lessors' repudiation. Consequently, the lessors and Teon Management are estopped from complaining about the second period of cessation of production. We overrule Teon Management's third and fourth issues.

V. *Conclusion*

The judgment of the trial court is affirmed in part and reversed and rendered in part. That portion of the judgment awarding Turquoise Bay attorney's fees is reversed, and judgment is rendered that Turquoise Bay take nothing on its claim for attorney's fees. In all other things, the judgment of the trial court is affirmed.

TERRY McCALL

October 27, 2011                                                JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

13