**Opinion filed April 23, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00048-CV

_____

## MEI CAMP SPRINGS, LLC, Appellant

## V.

## CLEAR FORK, INC. AND GUNN OIL COMPANY, Appellees

**On Appeal from the 32nd District Court**

**Fisher County, Texas**

**Trial Court Cause No. DC2018-0026**

### O P I N I O N

This is an oil and gas case that involves a claim between competing lessees. Appellees, Clear Fork, Inc. and Gunn Oil Company (collectively Gunn), assert that they are the lessees under a bottom lease granted by lessors Howard and Judy Gordon (the Gordons). The Gordons are not parties to this suit. Appellant, MEI Camp Springs, LLC, holds top leases from the Gordons over the same area. MEI contends that Gunn's bottom lease is void under the statute of frauds for lack of a property description.

Gunn sued MEI for a declaratory judgment seeking a determination that Gunn had a valid bottom lease and that Gunn holds superior title to the mineral estate to the exclusion of all others, including MEI. The trial court granted summary judgment in favor of Gunn on unspecified grounds. In five issues, MEI contends that (1) Gunn failed to present evidence of a valid oil and gas lease, (2) Gunn's bottom lease was void under the statute of frauds, (3) MEI's top leases did not violate the rule against perpetuities, (4) Gunn's declaratory judgment action should have been brought as a trespass to try title action, and (5) MEI's motion for continuance should have been granted. We affirm.

*Background Facts*

In 2011, the Gordons and Gunn executed an oil and gas lease (the original lease) for the mineral estate underneath the Gordon's property in Fisher County. We note at the outset that Gunn did not produce the original lease and does not expressly rely on the original lease in this suit. Instead, MEI produced the original lease from the Gordons to Gunn in order to support its claim that the original lease was void under the statute of frauds.

The original lease referred to an "Exhibit A" for its property description, but the record does not indicate that an "Exhibit A" was ever attached to the original lease. In 2012, the Gordons and Gunn executed a "Memorandum Giving Notice of Oil, Gas and Mineral Lease" (the memorandum of lease). In 2012, the Gordons and Gunn executed an amendment to the memorandum of lease. In 2015, the Gordons and Gunn executed an amendment to the original lease. Gunn relies on the memorandum of lease and the amendments as the basis for it having a valid bottom lease.

In 2017, the Gordons granted Resource Acquisition Management, LLC top leases over the same mineral estate. Resource later assigned the top leases to MEI.

2

In 2018, Gunn brought a declaratory judgment action against MEI seeking a determination that Gunn has a valid bottom lease and that Gunn has superior title to the mineral estate. In response, MEI asserted that the original lease was void under the statute of frauds. MEI counterclaimed with a suit to quiet title to establish that it has superior title to the mineral estate. The trial court granted summary judgment in favor of Gunn on unspecified grounds. This appeal followed.

*Analysis*

*Declaratory Judgment vs. Trespass to Try Title*

We first address MEI's fourth issue concerning the trial court's ruling on MEI's special exceptions. MEI asserts that Gunn should have prosecuted its claim as a trespass to try title action rather than a declaratory judgment action. MEI filed special exceptions challenging the propriety of a declaratory judgment action. The trial court denied MEI's special exceptions. MEI asserts that the trial court erred by denying MEI's special exceptions. MEI also asserts that the trial court erred because Gunn's suit was one to determine title to an interest in real property. Gunn responds that its suit was not, in substance, one to determine title and that, therefore, a declaratory judgment action was appropriate.

The purpose of special exceptions is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (citing *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998)). "A trial court has broad discretion in ruling on special exceptions." *Id.* Whether a trial court abuses its discretion depends on whether it acted without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We addressed the distinction between a trespass to try title action and a declaratory judgment action in *Teon Management, LLC v. Turquoise Bay Corporation.* 357 S.W.3d 719, 723–29 (Tex. App.—Eastland 2011, pet. denied).

We noted that both causes of action are statutory creations. *Id.* at 723. Section 22.001 of the Texas Property Code provides: "A trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a) (West 2014); *see Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021); *Martin v. Amerman*, 133 S.W.3d 262, 264 (Tex. 2004). The prevailing party's remedy is title to, and possession of, the real property interest at issue. *Teon Mgmt.*, 357 S.W.3d at 723 (citing *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). Conversely, Section 37.004 of the Texas Civil Practice and Remedies Code provides that a person with rights under a deed, contract, or instrument "may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2020).

There are procedural differences between the two causes of action. *Teon Mgmt.*, 357 S.W.3d at 723. One of the most important is the availability of attorney's fees. *Id.* Trial courts have the authority to award attorney's fees in declaratory judgment actions. CIV. PRAC. & REM. § 37.009 (courts "may award costs and reasonable and necessary attorney's fees as are equitable and just"). They do not have authority to award attorney's fees in trespass to try title suits. *Teon Mgmt.*, 357 S.W.3d at 723 (citing *EOG Res., Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 304 (Tex. App.—San Antonio 2007, pet. denied), wherein the court of appeals held that the recovery of attorney's fees is barred in a trespass to try title action because it is not provided for in the Property Code).

In most cases, when title to real property is in dispute, the proper cause of action is a trespass to try title action. *Id.* In determining the appropriate action, "[t]he dispositive question is: What is the nature of the dispute?" *Id.* at 727. In *Teon*, the dispute concerned whether seven oil and gas leases had terminated. *Id.* at 722.

We noted that "[the] case involved rival claims to the mineral estate, and every substantive issue was resolved when the trial court determined who owned the mineral estate." *Id.* at 727. Under those facts, we held that "[i]t was, therefore, a title determination, and [the claimant] should have proceeded with a trespass to try title suit." *Id.*

The Texas Supreme Court recently addressed the distinction between declaratory judgment actions and trespass to try title suits in *Lance v. Robinson*. 543 S.W.3d 723, 735–37 (Tex. 2018). Initially, we note that the holding in *Lance* is inapplicable to the instant case. There, the court held that a claimant was not required to bring a trespass to try title action in seeking to establish rights to an easement because an easement dispute does not involve any ownership or possessory interest. *Id.* Conversely, Gunn has a possessory interest in the disputed mineral estate, and the dispute directly concerns ownership thereto. *See Yowell v. Granite Operating Co.*, No. 18-0841, 2020 WL 2502141, at *3 (Tex. May 15, 2020) (an oil and gas lease typically conveys a fee simple determinable interest to the mineral estate). Although its holding is inapplicable, *Lance* provides useful clarification to the distinction between declaratory judgments and trespass to try title suits: "The trespass-to-try-title statute . . . only applies when the claimant is seeking to establish or obtain *the claimant's* ownership or possessory right in the land at issue." *Lance*, 543 S.W.3d at 736.

This case involves rival claims to the mineral estate because the parties disagree on the lease that is in effect. Gunn specifically sought to establish—or at least confirm—that it was the current lessee of the mineral estate by virtue of the memorandum of lease and the amendments. Gunn was not simply seeking to clarify its rights and interest in the bottom lease but, rather, to declare that its rights and interests were superior to that of MEI. Therefore, the dispute is substantively a title determination, and Gunn should have proceeded with a trespass to try title suit.

5

However, Gunn voluntarily nonsuited its claim for attorney's fees, and the trial court did not award any attorney's fees. Thus, the issue of attorney's fees is not before us.

Texas courts, including this court, have held that, even though a claim for declaratory judgment should have been brought as a trespass to try title claim, the trial court did not abuse its discretion in overruling an objection or special exception to this defect if the "claims for declaratory relief can be characterized as claims for trespass to try title." *Teon Mgmt.*, 357 S.W.3d at 728; *see Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 339 (Tex. App.—San Antonio 2006, pet. denied); *Aguillera v. John G. & Marie Stella Kenedy Mem'l Found.*, 162 S.W.3d 689, 697 (Tex. App.—Corpus Christi–Edinburg 2005, pet. denied). Accordingly, we analyze Gunn's claim for declaratory relief to determine if it can be characterized as a trespass to try title claim. *See Teon Mgmt.*, 357 S.W.3d at 727.

"We liberally construe pleadings because special exceptions are only a challenge to determine if the 'fair notice' requirements of pleadings have been met." *Ross v. Goldstein*, 203 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in the excepted-to pleadings. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex. 1994).

"[T]he substance of the plaintiff's pleadings determines whether a claim sounds in trespass to try title." *Brumley*, 616 S.W.3d at 833. The plaintiff in a trespass to try title action is required to prove its title by proving (1) a regular chain of conveyances from the sovereign to the plaintiff, (2) a superior title to that of the defendant out of a common source, (3) title by limitations, or (4) prior possession that has not been abandoned. *Brumley*, 616 S.W.3d at 832; *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). Here, Gunn pleaded that it was the original and current lessee of the mineral estate under the bottom lease and that it held superior title to MEI out of a common source, the Gordons. Furthermore, it is

6

undisputed that Gunn had prior possession of the mineral estate before filing suit. *See Teon Mgmt.*, 357 S.W.3d at 728–29. Thus, Gunn satisfied the pleading requirements for a trespass to try title action, and the trial court did not abuse its discretion by overruling MEI's special exceptions. *See id.* at 727–29.[1] We overrule MEI's fourth issue.

*Summary Judgment*

In its first and second issues, MEI contends that the trial court erred in granting Gunn's traditional motion for summary judgment and denying MEI's traditional and no-evidence motions for summary judgment.[2] Gunn initially filed a traditional motion for summary judgment seeking a declaration that it had a valid bottom lease. Gunn later filed a supplement to its motion for summary judgment seeking a declaration that MEI's top leases violated the rule against perpetuities. MEI filed a competing traditional and no-evidence motion for summary judgment seeking a determination that Gunn's bottom lease was not valid. The trial court granted Gunn's motion and denied MEI's motion on unspecified grounds.

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When the trial court's order does not specify the grounds for its summary judgment, we will affirm the summary judgment if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216. Generally, if a party moves for summary judgment on both traditional and no-

---

[1]In *Teon*, we sustained an issue that asserted that a recovery of attorney's fees was not available, and we reversed and rendered judgment on attorney's fees. 357 S.W.3d at 729, 730–31. The remainder of the trial court's judgment was affirmed even though the plaintiff labeled its claim as a declaratory judgment action. *Id.* at 730–31.

[2]The parties filed motions for partial summary judgment. But after the trial court granted Gunn's motion for partial summary judgment and denied MEI's motion for partial summary judgment, the parties nonsuited their remaining claims. Accordingly, the trial court's summary judgment orders constitute a final judgment.

evidence grounds, we first consider the no-evidence motion. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

When, as here, the parties file cross-motions for summary judgment and the trial court grants one party's motion and denies the other's, we review the summary judgment evidence presented by both parties and determine all the issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant.  *Merriman*, 407 S.W.3d at 248; *City of Keller*, 168 S.W.3d at 824.

*Statute of Frauds*

MEI asserted in its no-evidence motion for summary judgment that Gunn had no evidence of a valid lease.  This claim by MEI is a corollary to MEI's traditional grounds that (1) the original lease from the Gordons to Gunn was void under the statute of frauds and (2) the subsequently executed documents did not amend or ratify the original lease.  Conversely, Gunn asserted in its motion for summary judgment that the memorandum of lease and the amendments constitute a valid lease as a matter of law.  Because of the interrelated nature of the claims, we will address them together.

Lying at the heart of MEI's claims is the contention that the original lease from the Gordons to Gunn is void because it violates the statute of frauds.  *See* TEX. BUS. & COM. CODE ANN. § 26.01 (West 2015).  Relying upon this contention, MEI asserts that the subsequent documents cannot supply a missing element to a void conveyance and that Gunn cannot recover without producing a valid lease.

We note at the outset that nonparties to a contract or conveyance generally lack standing to challenge it under the statute of frauds.  *'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 938–39 (Tex. 1972) ("[I]t is the general rule that a stranger to a contract cannot invoke the statute of frauds[.]").  Here, both Gunn and the Gordons assert that Gunn has a valid bottom lease.  The Gordons did

so in affidavits attached to Gunn's motion for summary judgment. Thus, our consideration of MEI's reliance on the statute of frauds is somewhat unusual because MEI is a stranger to the alleged bottom lease between Gunn and the Gordons.

An agreement conveying an oil and gas interest must contain a description of the property in order to satisfy the statute of frauds. *Carpenter v. Phelps*, 391 S.W.3d 143, 148 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982); *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972)). Under established case law, if a conveyance of an interest in real property does not sufficiently describe the land to be conveyed, it is void and unenforceable under the statute of frauds. *See Republic Nat'l Bank of Dallas v. Stetson*, 390 S.W.2d 257, 261 (Tex. 1965). Given the void nature of a conveyance that does not sufficiently describe the property, we will assume that MEI can assert a challenge based on the statute of frauds.

"[A] void instrument can be made valid by adoption, ratification or confirmation." *Nat'l Bank of Commerce v. May*, 583 S.W.2d 685, 690 (Tex. Civ. App.—Eastland 1979, writ ref'd n.r.e.). The primary question in this case is whether the memorandum of lease and the amendments were sufficient to constitute a bottom lease from the Gordons to Gunn.

Gunn relies on the opinion in *Reserve Petroleum Co. v. Hodge* to assert that it has a valid bottom lease by virtue of the memorandum of lease and the two amendments. *See Reserve Petroleum Co. v. Hodge*, 213 S.W.2d 456 (Tex. 1948). In *Hodge*, the Texas Supreme Court held that mineral deeds, which were void when executed because the property description was omitted, were "corrected" and that the property description was "supplied by recitals in a subsequent lease which acknowledged the validity of a former deed." *Hastings v. Pichinson*, 370 S.W.2d 1, 4 (Tex. App.—San Antonio 1963, no writ) (describing the holding in *Hodge*); *see Hodge*, 213 S.W.2d at 457–59. As noted by Justice Jack Pope, who later became

10

the chief justice of the Texas Supreme Court, "[t]he subsequent execution of a formal document . . . which expressly recognized in clear language the validity of the lifeless deed or lease has been held to give it life." *Hastings*, 370 S.W.2d at 4 (discussing *Hodge*).

*Hodge* involved mineral deeds that violated the statute of frauds because, at the time of their execution, the deeds failed to include a legal description of the land. 213 S.W.2d at 457. By the time the deeds were filed for record, however, the property description was contained with the deeds. *Id.* However, the grantors asserted that they did not give anyone authority to insert the property description in the deeds. *Id.* The grantors later executed an oil and gas lease that contained a recital to the effect that the previous mineral deeds were valid. *Id.* The grantors subsequently asserted that the mineral deeds were void because of the absence of a property description and that they could not later be made valid. *Id.*

The court held in *Hodge* that, even though the deeds were void because of the absence of a property description, the grantors' subsequent execution of a lease with a recital recognizing the validity of the deeds constituted a ratification of the deeds. *Id.* at 457–58. As stated by the court, "the oil and gas lease executed by [the grantors] contains, in terms of an agreement, a formal recognition of the validity of the two mineral deeds and of the ownership under the deeds of an undivided one-half interest in the minerals, and, under the authorities cited, it was a full and effective ratification of those deeds." *Id.* at 459. Thus, a defective conveyance may be ratified by subsequent instruments that "were executed in formal recognition of the validity of the conveyances to which they referred." *Id.*

Gunn asserts that any deficiency in the original lease was remedied by ratification under *Hodge* as a result of the memorandum of lease and the amendments. Gunn also asserts that the memorandum of lease and the amendments, in and of themselves, constitute a valid lease. We agree with both propositions.

The memorandum of lease provides in relevant part as follows:

## MEMORANDUM GIVING NOTICE OF
## OIL, GAS AND MINERAL LEASE

**State:**          **Texas**
**County:**         **Fisher**
**Lessor:**         **Howard Gordon and wife, Judy Gordon**
                    **. . .**
**Lessee:**         **Gunn Oil Company**
                    **. . .**
**Effective Date:** **September 28, 2011**

For adequate consideration, Lessor, named above, has granted, leased and let to Lessee, named above, for the purpose of investigating, exploring, prospecting, drilling, mining for, and producing oil, gas, and other minerals, laying pipelines, building roads, tanks, power stations, telephone lines and other structures to produce, save, take care of, treat, transport, and own oil, gas and other minerals, all on or from the following lands (the "Lands") in the County and state above named:

See Attached Exhibit "A" for Legal Description

The Oil, Gas and Mineral Lease (the "Lease") is for a primary term of three (3) years from the Effective Date stated above, with the option to extend the primary term for an additional two (2) years, and is effective as long thereafter as oil, gas, or other minerals are produced in paying quantities from the Lands, or other lands pooled with the Lands, according and by the terms and provisions of the Lease between Lessor and Lessee. The Lease, with all of its terms, covenants, and other provisions, is referred to and incorporated into this Memorandum for all purposes. This Memorandum is placed of record for the purpose of giving notice of the Lease. The original of the Lease is maintained in the office of the Lessee.

This Memorandum is signed by Lessor and Lessee as of the date of acknowledgement of their signatures, but is effective for all purposes as of the Effective Date stated above.

Following the parties' signatures and the notary acknowledgements, the memorandum of lease contained an Exhibit A, which contained a metes and bounds description of the leased property.

Gunn asserts that the memorandum of lease constitutes a valid oil and gas lease as a matter of law. We note at the outset that the modern practice in the oil and gas industry is for a memorandum of lease to be filed in the public records in lieu of the actual oil and gas lease in order to preserve the confidentiality of lease terms. *See* WILLIAM B. BURFORD, 6 WEST'S TEXAS FORMS, MINERALS, OIL & GAS § 5:27 (4th ed.); NANCY SAINT-PAUL, 5 SUMMERS OIL AND GAS § 56:2 (3d ed.). MEI asserts that the memorandum of lease here is merely a "notice document" that gives the public notice of the original lease. We disagree.

"In Texas, a typical oil and gas lease actually conveys the mineral estate (less those portions expressly reserved, such as royalty) as a determinable fee." *Luckel v. White*, 819 S.W.2d 459, 464 (Tex. 1991) (citing *Stephens Cty. v. Mid–Kansas Oil & Gas Co.*, 254 S.W. 290, 295 (Tex. 1923)). The memorandum of lease in this case identifies the lessors and the lessee, and it contains a granting clause wherein it states that the lessor "has granted, leased and let" to Gunn the right to develop and produce oil and gas from the leased premises. It also contains a metes and bounds description of the property; provides for a primary term of three years from the effective date of September 28, 2011; provides for an option for the primary term to be extended; and contains a habendum clause to the effect that the lease will remain in effect "as long thereafter as oil, gas, or other minerals are produced in paying quantities from the Lands, or other lands pooled with the Lands."

MEI cites *Oakrock Exploration Co. v. Killam* for the proposition that a valid lease must contain its term of duration, drilling commencement date, time and amount of delay rentals, royalty, pooling provisions, offset well obligations, and warranties to constitute a valid lease. 87 S.W.3d 685, 689–91 (Tex. App.—San

Antonio 2002, pet. denied). We disagree with MEI's reliance on *Oakrock*. In that case, the San Antonio Court of Appeals addressed letters that discussed a future mineral lease. *Id.* The property owners asserted that the letters constituted a binding contract to enter into an oil and gas lease. The exploration company that sent the letters asserted that the letters were nothing more than "agreements to agree." *Id.* at 689. The court concluded that the letters were an "unenforceable agreement to agree" because they omitted essential terms descriptive of the lease. *Id.* at 690. The court identified those essential terms to be the term of the lease, the drilling commencement date, the time and amount of payments in lieu of drilling operations, and the amounts to be paid for produced gas. *Id.* at 690–91.

*Oakrock* is factually distinguishable because the parties to the alleged agreement disputed the existence of an agreement. Here, the parties are the Gordons and Gunn, and they do not dispute the existence of their agreement. Additionally, *Oakrock* concerned letters that contemplated a future oil and gas lease, whereas here the Gordons and Gunn had an agreement that they memorialized with a document they filed in the public records.

MEI also asserts that the memorandum of lease cannot constitute a lease because it does not contain "words of present grant." As noted previously, the memorandum of lease used the words "has granted, leased and let." These words constitute the use of the present perfect tense. *See* MARK LESTER AND LARRY BEASON, THE MCGRAW-HILL HANDBOOK OF ENGLISH GRAMMAR AND USAGE 84 (2d ed. 2013). "The present perfect tense deals with an action that began in the past and continues up to the present time." *Id.* Accordingly, we disagree with MEI's assertion that the memorandum of lease only describes a past conveyance.

Moreover, the Gordons' top leases with MEI's predecessor-in-title provided as follows:

14. Top Lease. This Oil and Gas Lease is a "Top Lease" and shall only become effective upon the termination of that certain Memorandum of Oil and Gas Lease dated September 28, 2011 by and between Howard Gordon and wife, Judy Gordon as lessors and Gunn Oil Company as lessee, being recorded by instrument number 120609 of the Official Public Records of Fisher County Texas ("Existing Lease") covering the same lands described herein.

Thus, the top leases expressly recognized that Gunn had a valid bottom lease by virtue of the memorandum of lease rather than through the original oil and gas lease. Furthermore, the top leases provided that they did not take effect until the termination of the leasehold estate created by the memorandum of lease.

With respect to the amendments, the first amendment indicated that it amended the property description in the memorandum of lease. The second amendment indicated that it amended the original lease. It contained a statement wherein the Gordons "recognized" the original lease "as being in full force and effect." The second amendment extended the primary term of the original lease and set out a continuous development provision. It also provided as follows:

Except as amended and modified herein, the lease and the prior provisions thereto, shall remain in full force and effect and each of the undersigned does hereby adopt, ratify and confirm said lease as to all of the terms and provisions therein, including as herein amended, and does hereby lease, grant, demise, and let the interest of the undersigned unto Lessee, in accordance with all of the terms and provisions of the said lease, including as herein amended.

The memorandum of lease and the two amendments upon which Gunn relies constitute proof of leasehold title in favor of Gunn. These instruments were all executed and filed of record prior to the execution of MEI's top leases. Accordingly, we disagree with MEI's contention that Gunn also had to produce a valid lease in

15

order to establish its title to the mineral estate. Furthermore, the memorandum of lease and the two amendments ratified the existence of Gunn's leasehold estate. *See Hodge*, 213 S.W.2d at 457–59; *Hastings*, 370 S.W.2d at 4. These documents also remedied the absence of a property description in the original lease. We disagree with MEI's contention that the property description had to be physically added to the original lease in order for the holding in *Hodge* to apply. While that step occurred in *Hodge*, the court noted that it assumed "that the grantors did not authorize the insertion of the description." 213 S.W.2d at 457. Accordingly, a person's act of affixing a property description to a void deed has no practical effect on its ratification. The act of significance is the execution of a subsequent instrument that "contains, in terms of an agreement, a formal recognition of the validity" of the defective conveyance. *Id.* at 459; *see Hastings*, 370 S.W.2d at 4.

The trial court did not err in granting summary judgment in favor of Gunn and against MEI because the summary judgment evidence presented by Gunn established superior title in favor of Gunn as a matter of law. We overrule MEI's first and second issues.

*Rule Against Perpetuities*

MEI's third issue concerns Gunn's request for summary judgment on its claim that MEI's top leases violate the rule against perpetuities. However, we have already determined that Gunn was entitled to summary judgment on the basis that it has superior title.[3] Accordingly, we do not reach MEI's third issue concerning an alternative basis for Gunn's summary judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

---

[3]In a trespass to try title action, a plaintiff is required to prevail on the superiority of its title, not on the weakness of a defendant's title. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).

*Motion for Continuance*

In its fifth issue, MEI contends that the trial court erred in denying its motion for continuance of the summary judgment hearing. We review a trial court's ruling on a motion for continuance of a summary judgment hearing for an abuse of discretion. *See D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 222 (Tex. App.—Fort Worth 2013, no pet.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)).

Rule 166a(g) permits a trial court to grant a continuance to the party opposing a motion for summary judgment if that party files an affidavit setting forth the reasons the party cannot present the facts necessary to respond to the summary judgment motion. TEX. R. CIV. P. 166a(g). An affidavit seeking a continuance to obtain additional evidence must describe the evidence sought, explain its materiality, and demonstrate that the party requesting the continuance has used due diligence to timely obtain the evidence. *D.R. Horton–Tex.*, 416 S.W.3d at 222–23. In deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery or to obtain additional evidence, a court should consider the following "nonexclusive" factors: (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *see D.R. Horton–Tex.*, 416 S.W.3d at 223.

Gunn filed suit on July 24, 2018. Gunn filed its motion for summary judgment on August 30, 2018. MEI filed its motion for summary judgment on September 19, 2018. The trial court heard the motions for summary judgment on October 10, 2018, and entered an order granting summary judgment in favor of Gunn on that date. Accordingly, this case proceeded to resolution in a short amount of time.

MEI supported its request for a continuance on an unsworn declaration from its attorney. He stated that certain facts, once discovered, would support the affirmative defenses pleaded by MEI: unclean hands, fraud, and failure of consideration. MEI asserts in its brief that these affirmative defenses would have otherwise barred Gunn from recovering and that additional discovery was necessary. We disagree.

The affirmative defenses upon which MEI relies are not material because they are defenses that belong to the Gordons. For example, "[d]eeds procured by fraud are voidable only, not void, at the election of the grantor." *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976). Thus, "[a] suit to set aside a deed obtained by fraud can only be maintained by the defrauded party." *Id.* at 927. A third party lacks standing to challenge a voidable defect in a contract or conveyance. *Morlock, L.L.C. v. Bank of New York*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see Lance*, 543 S.W.3d at 739 (citing *Morlock* for this proposition).

The same general rule applies to a claim of failure of consideration: a party may rescind or cancel its contract for failure of consideration because it "operates as constructive or legal fraud." *Food Mach. Corp. v. Moon*, 165 S.W.2d 773, 775 (Tex. App.—Amarillo 1942, no writ); *see Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 748 (Tex. App.—Dallas 2012, no pet.); *Glass v. Carpenter*, 330 S.W.2d 530, 536 (Tex. App.—San Antonio 1959, writ ref'd n.r.e.) ("As a general rule, a party to a contract or a privy therein, and he alone, is entitled to maintain a suit to cancel or rescind it."). Likewise, "[t]he party to a suit, complaining that his opponent is in court with 'unclean hands' . . . must show that *he himself* has been injured by such conduct, to justify the application of the principle to the case." *Omohundro v. Matthews*, 341 S.W.2d 401, 410 (Tex. 1960) (emphasis added) (quoting 2 POMEROY'S EQUITY JURISPRUDENCE 99 (4th ed.)).

MEI has not shown how any facts it might discover would otherwise be necessary, or even helpful, to support a theory or defense material to the summary judgment issues that were before the court. MEI's unsworn declaration only represents facts that, if true, would constitute fraud and injury upon the Gordons, not MEI. As noted previously, the Gordons have executed affidavits wherein they contend that Gunn has a valid bottom lease. Thus, the facts sought to be discovered were immaterial. The trial court did not abuse its discretion in denying the motion for continuance. We overrule MEI's fifth issue.

## *This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


April 23, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[4]

Williams, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.