NO. 07-11-0350-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 12, 2012
_____

BILLIE AND CAROLYN BUCKINGHAM AND
BRITT AND TARA BUCKINGHAM,

                                                          Appellants
                            v.

JOSH MCAFEE AND SHAWN SCHOLL,

                                                          Appellees
_____

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 12,356; HONORABLE DAVID L. GLEASON, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

In this appeal, we are asked to decide if the trial court erred in declaring that appellants Billie and Carolyn Buckingham and Britt and Tara Buckingham (collectively "the Buckinghams") do not own a portion of the Red River riverbed claimed by Josh McAfee and Shawn Scholl (collectively "McAfee"). We conclude that it did not, after considering the arguments urged by them.

*Background*

Realty deeded to the Buckinghams surrounds the riverbed in question. It encompasses all land lying south of the south bank and north of the north bank of the North Fork of the Red River found in section 93, Block 13, H&GN RR Co. Survey, Wheeler County, Texas. Furthermore, they acquired the property from individuals whom we will call the Taylors, Seagos, and Burkhalters. The Taylors, Seagos, and Burkhalters acquired their respective interests in the land via a deed from the Glynn-Juanita Family Limited Partnership, while the latter acquired its interest from Glynn and Juanita Bell. In turn, the Bells took their interest via a deed from Gideon and Annie Bell that was executed in 1941. Per the 1941 conveyance, Gideon and Annie transferred to Glynn several sections of land in Wheeler County, including section 93, Block 13. And, the conveyance of section 93 was described as "all of Section No. Ninety Three (93) in Block No. Thirteen (13), except ninety (90) acres reserved for river bed, all of the above being in Wheeler County . . . . " While the Buckinghams consider the description of the riverbed "except[ed]" from the conveyance to Glynn Bell as rather vague, no one suggests that it can encompass riverbed lying in section 93 other than that claimed by McAfee. Nor does anyone contend that the total riverbed within section 93 exceeded the aforementioned ninety acres.[1]

*Discussion*

A.    *Riparian Rights*

To illustrate that they owned the riverbed at issue, the Buckinghams invoked the doctrine of riparian rights. They describe the same as "the rights of the owners of land

---

[1]As will be illustrated in footnote 2, there is no material issue of fact regarding the matter. There are only ninety acres of riverbed in section 93 and it consists of the riverbed appended to the Red River.

on the banks of watercourses, relating to water, its use, and ownership of soil under the stream or river." Per the theory, a "riparian proprietor owns the bed of the stream." In other words, "[w]hen a private party makes a conveyance of land bordering on a stream, . . . the grantor [purportedly] conveys title to the one-half of the stream bed abutting his land." To support the proposition, they cite us to *Strayhorn v. Jones*, 157 Tex. 136, 300 S.W.2d 623 (1957). The actual language in *Strayhorn* to which the Buckinghams allude is:

> We hold that when a private person (including corporations, etc.) conveys title to lands owned by him abutting a stream -- whether navigable or not – such conveyance passes to the grantee (*unless the conveyance clearly shows a contrary intention*), title to the one-half of such stream bed abutting his land, subject, of course, to whatever rights the State of Texas may have in the stream bed.

*Id.* at 634 (Emphasis added). Moreover, it is the italicized language in the quotation that we find determinative here.

As previously mentioned, Gideon Bell's deed to Glynn Bell contained the following language: "except ninety (90) acres reserved for river bed." While that passage mentions no metes or bounds, it nonetheless reveals a clear intent on the part of Gideon to exclude "riverbed" from the conveyance to Glynn and his successors-in-interest like the Buckinghams. More importantly, the Buckinghams cited us to no authority suggesting that the requisite "contrary intention" referred to in *Strayhorn* can be satisfied only through a valid legal description of the riverbed excepted. Nor did we find any such authority. Indeed, the Supreme Court in *Strayhorn* simply said that the conveyance need only disclose a clear intention to exclude riverbed from the conveyance, and we care not to make law by adding to that statement. Thus, the theory of riparian rights, as explained in *Strayhorn*, is inapplicable here. And, because

3

those from whom the Buckinghams acquired their interest in the land did not acquire the ninety acres of riverbed, the trial court did not err in withholding title to the same from them.

Additionally, other evidence of record supports the accuracy of our decision. For instance, the individual from whom Gideon Bell acquired his interest (*i.e.,* Counts) described the land being conveyed as "fifty (50) acres more or less out of said section [93] lying *North of the North Fork of [the] Red River.*" (Emphasis added). Gideon bought his other interest in section 93 from a person named Ford, who, in turn, bought the land from Counts. And, the conveyance from Counts to Ford described the land being transferred as all "of Section (93) . . . which lies *South of [the] Red River; and being five hundred acres*, more or less, the north boundary of the tract hereby conveyed being the Red River with its meanderings." (Emphasis added). About ten years later, Counts quitclaimed to Geneva D. Mullen (that is, McAfee's predecessor-in-title) the following:

> Ninety acres of land . . . known as a part of Section No. 93 . . ., the land conveyed being the land lying between the North Bank and South Bank of the North Fork of [the] Red River, according to its meanderings.

The deed to Mullen further provided that:

> [i]t is understood that this deed conveys all of the land not heretofore conveyed, the part that has been heretofore conveyed being in two tracts the First tract that is excepted being 50 acres lying North of the North Fork of [the] Red River, sold to Gideon Bell April 9, 1912, . . . the second tract being 500 acres sold by the Grantor herein in F. G. Ford by Deed dated October 30, 1912 . . . . This Deed is intended to convey all of my interest in said land that has not heretofore been conveyed.

So what we have is Counts transferring "50 acres" north of the Red River to Gideon and "500 acres" south of the Red River to Ford. Given that a section contains six hundred

4

forty acres, he was left with ninety acres comprising the land area between the north and south boundaries of the Red River. And, it just so happens that the amount of riverbed conveyed to Mullen was "ninety acres" or, as Counts expressly recognized via the deed to Mullen, "all of the land not heretofore conveyed" by him.[2]

*B.     Ownership In McAfee*

The Buckinghams next question whether McAfee adequately proved ownership of the riverbed. They preface that discussion by alleging that their "discussion on riparian rights is the beginning, middle and end of this controversy." We must agree with that statement to the extent it concerns the issue of title.

The Buckinghams do not own the riverbed. The trial court so found via its partial summary judgment, and we find no error in that decision. Consequently, the matter of who else may own the property is moot, at least as to the Buckinghams. This is especially so since the record fails to disclose that they have the authority to assert the rights of anyone else who may claim ownership. So, we need not address the arguments contained under their issue "1B." Moreover, our conclusion comports with the rule mentioned by the Supreme Court in *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763 (Tex. 1994).

Like here, the circumstances in *Ricane* also encompassed a dispute over title to realty. In resolving the controversy, the Supreme Court said that the claimant is restricted to recovering upon the strength of his own title; he cannot prove ownership

---

[2]Incidentally, if a section of land equals six hundred forty acres (which it does) and section 93 consists of fifty acres north of the Red River and five hundred acres south of that same river, then it must be that ninety acres of the Red River's riverbed comprise the remainder of that section. This is of import because it tends to clarify whatever vagaries there may have been in the description of riverbed excluded from the conveyance from Gideon to Glynn Bell. In other words, there is only ninety acres of riverbed in section 93; so, the ninety acres referred to in the 1941 deed and reservation can only be that previously given Mullen.

based upon the weakness or shortcomings of his opponent's claim. *Id.* at 768. And, while the court was alluding to an action for trespass to try title, the logic underlying the rule is nonetheless applicable here. Whoever says they own a parcel of realty should be required to prove their title to same rather than simply obtain ownership because someone else cannot show it is theirs. So, since the Buckinghams failed to establish their title to the riverbed, we see little reason to entertain their allegations involving whether McAfee satisfied his burden.

### C. The Right Cause of Action

Nor do we assign importance to the allegation that title could not be adjudicated because the proceeding was one for declaratory judgment as opposed to an action in trespass to try title. Interestingly, the record discloses that the Buckinghams were the first to seek an adjudication of title via a request for a declaratory judgment. It appeared in their counterclaim. Thereafter, McAfee sought similar relief through similar means. Moreover, neither questioned the other's ability to resolve the dispute via the procedural mechanism they selected before the trial court resolved the controversy through its partial summary judgment. So, it can be said that not only did the Buckinghams fail to contemporaneously object to the nature of the cause of action being prosecuted, but also invited the error of which they now complain. In either case, the complaint is waived. *See Teon Management, L.L.C. v. Turquoise Bay Corp.,* 357 S.W.3d 719, 726 (Tex. App.–Eastland 2011, pet. denied) (holding that the failure to complain about the use of a declaratory proceeding to adjudicate title waives the complaint on appeal); *accord Krabbe v. Anadarko Petroleum Corp.,* 46 S.W.3d 308, 320-21 (Tex. App.– Amarillo 2001, pet. denied) (concluding the same); *In re Dep't of Family and Protective*

6

*Services,* 273 S.W.3d 637, 646 (Tex. 2009) (holding that one cannot complain about error he invited).

### D. Attorney's Fees

Related to the controversy underlying our discussion in the preceding paragraph is the topic of attorney's fees. Such fees could not be awarded McAfee, according to the Buckinghams, since title was at issue, the issue should have been resolved via a suit for trespass to try title, and attorney's fees cannot be awarded in such an action. But, as previously concluded, the trespass to try title versus declaratory judgment conundrum went unmentioned. This circumstance, therefore, calls into application our holding in *Krabbe v. Anadarko Petroleum.* The Buckinghams "did not preserve error in regard to the argument that attorneys' fees were erroneously awarded because the suit was, in substance, a trespass to try title suit[;] [and,] [b]ecause the error was not preserved and we have previously failed to find reversible error in the trial court's ruling ...[denying them title to the riverbed], we overrule . . . [the] issue." *Krabbe v. Anadarko Petroleum Corp.,* 46 S.W.3d at 321.

### E. Sufficiency of the Property Description

Next, we address the Buckinghams' argument that McAfee failed to establish the location of the claimed property. It is true that a valid conveyance requires a description (of the property being conveyed) sufficient to allow a party familiar with the locality to identify the premises with reasonable certainty. *Lowell v. Miguel R.,* 293 S.W.3d 764, 767 (Tex. App.–San Antonio 2009, pet. denied), *citing Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248 (1955); *see also TH Investments, Inc. v. Kirby Inland Marina, L.P.*, 218 S.W.3d 173, 192 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (stating that in

7

a trespass to try title action, the question is whether the land can be identified with reasonable certainty).

Here, we have a description of the land that includes the number of acres conveyed (*i.e.,* ninety), a statement that the acreage lies between the north and south bank of the North Fork of the Red River, according to its meanderings, and a reference to the particular section (*i.e.,* 93), block (*i.e.,* 13), and survey (*i.e.,* HG&N RR Co. Survey) in Wheeler County encompassing the land.  To this, we add our prior observation that the only riverbed within Section 93, Block 13 of the HG&N RR Co. Survey in Wheeler County is the ninety acres in dispute here.  So, we conclude that the description conveying the realty to McAfee's predecessor-in-title was and is sufficient to identify the land with reasonable certainty.  *See Siegert v. Seneca Resources Corp.*, 28 S.W.3d 680, 683 (Tex. App.–Corpus Christi 2000, no pet.) (stating the land was capable of being described with reasonable certainty when the amount of acres was stated and it was further described as "lying in the bend of the old Brazos River" together with statements that the land "was formerly part of the Walter Sutherland League in Brazos County" and that the land is "almost surrounded by the Fisher League").

*F.    Easement by Necessity*

The Buckinghams next contend that McAfee failed to prove his claim to an easement by necessity.  We disagree.

One may secure an easement by necessity to his property over the land of another by proving that 1) there was unity of ownership in both properties prior to separation, 2) access is a necessity and not a mere convenience, and 3) the necessity existed at the time of severance of the two estates.  *Koonce v. J. E. Brite Estate*, 663

8

S.W.2d 451, 452 (Tex. 1984). It is the third element that the Buckinghams address. They believe that McAfee failed to prove that there was no access to the riverbed when Counts sold the land surrounding the riverbed to Bell and Ford and the riverbed to Mullen.

The record before us contains the affidavit of Billie Buckingham. In it, he states that "neither Geneva D. Mullen nor any of the individuals in the chain of title from Mrs. Mullen to the disputed acreage have had control or possession of any portion of Section 93." A map of Section 93, also appearing in the summary judgment record, shows no public road or easement to the ninety acres of riverbed through the surrounding land. This is some evidence not only to support the trial court's finding that McAfee's predecessor-in-title received "only an inner portion of Section 93 which was entirely surrounded by land owned by Glynn Bell and his family" but also that access was a necessity at the time of severance of the two estates. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (stating that a challenge to the legal sufficiency of the evidence fails when there is some probative evidence which, when viewed in its most favorable light, supports the trial court's judgment).

We overrule each issue or contention asserted by the Buckinghams and affirm the judgment.


Brian Quinn
Chief Justice


9