Opinion filed May 11, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00015-CV
_____

### ARCHER PETROLEUM, LTD. CO., Appellant

### V.

### LLOYD AND SHERITY MEEK, Appellees

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 024889**

## M E M O R A N D U M   O P I N I O N

This appeal arises from an oil and gas lease surface use dispute between Appellant, Archer Petroleum, Ltd. Co., and Appellees, Lloyd and Sherity Meek. Appellees initiated the underlying suit and asserted claims against Appellant for an accounting, breach of contract, and trespass to try title to recover surface damages to their property and to obtain recordable releases of all acreage that was no longer subject to continuous drilling operations. Appellees filed a motion for partial

summary judgment that only addressed whether Appellant was liable to Appellees under the theories they had asserted, which the trial court granted. The parties later proceeded to a bench trial on damages that pertained to Appellees' breach of contract claim. At the conclusion of the bench trial, the trial court awarded damages to Appellees in the amount of $14,617.

On appeal, Appellant challenges the trial court's grant of partial summary judgment and the damages it awarded to Appellees. We reverse and remand.

## I. *Factual and Procedural Background*

Appellees own surface and associated mineral rights in 175.28 acres located in Jones County. On March 29, 2017, Appellees executed an oil and gas lease with Supreme Energy Company, Inc. The lease covers the 175.28 acres in Jones County, save and except 40 acres of land that is held by production as a proration unit under a lease dated May 30, 2014. The March 29, 2017 lease also includes an addendum that imposes certain duties on the lessee to maintain and repair the surface as it conducts its exploration and production operations on the acreage.

Appellant is the successor-in-interest and/or assignee of Supreme Energy. Supreme Energy drilled a well (Patton #1) on the excepted 40-acre tract before Appellant purchased the March 29, 2017 lease. After it purchased this lease, Appellant drilled two additional wells (Patton #2 and #3) on the excepted 40-acre tract. In their pleadings, Appellees allege that Appellant breached its duties and obligations under the March 29, 2017 lease in several respects.

After Appellees filed their motion for partial summary judgment, Appellant responded and asserted several objections to Appellees' summary judgment evidence (which included the March 29, 2017 lease and an affidavit and supplemental affidavit of Lloyd Meek). Appellant also submitted summary judgment evidence, which included (1) a surface and mineral ownership report, (2) affidavits from three Archer Petroleum representatives that detailed their

2

knowledge of the condition of the surface and continuing operations of the wells located on the property, and (3) a release of the property. After a hearing, the trial court granted Appellees' motion.

The trial court later held a bench trial on the claims for damages that Appellees sought. Lloyd Meek testified about the surface damage to the acreage, the locations of three wells that had allegedly caused the surface damage, and the wells' current operating status. Meek's testimony did not clearly identify whether the three wells were located within or outside of the boundaries of the 40-acre tract that was excepted from the March 29, 2017 lease. Appellant presented the testimony of Mark Lundgren (a landman) and Drew Hudson, the owner of Archer Petroleum. Hudson testified that (1) the three wells were located either within the 40-acre tract or just outside its boundaries; (2) Appellant had taken measures to maintain the surface during its operations on the property; and (3) Appellant had released the leases with Appellees with respect to the property around Patton #1 and #3.

After considering the evidence, the trial court awarded Appellees damages totaling $14,617. The trial court's summary judgment ruling and subsequent damages findings were merged into a final judgment; however, the final judgment did not address Appellees' claims for an accounting or trespass to try title.

## II. *Analysis*

Appellant raises two issues on appeal: (1) the trial court erred when it granted partial summary judgment in favor of Appellees on their claims for breach of contract and trespass to try title; and (2) the trial court's damages award in favor of Appellees is not supported by legally sufficient evidence.

In its first issue, which challenges the trial court's grant of summary judgment, Appellant asserts that (1) a fact issue exists as to whether it breached the March 29, 2017 lease in the manner alleged by Appellees because the damages that Appellees sought to recover were not sustained as a result of operations on this lease, and

(2) Appellees did not conclusively establish which lease or tract of land was affected by Appellant's operations and alleged breach.

We review a trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When the trial court does not specify the grounds for its ruling, as is the circumstance here, a summary judgment must be affirmed if any of the grounds on which the judgment is sought are meritorious. *Id.*

A party moving for a traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). For a trial court to grant a traditional motion, a plaintiff must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). "Evidence is conclusive only if reasonable people could not differ in their conclusions . . . ." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

In reviewing either a traditional or a no-evidence summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props.,*

4

*Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007).

The basis of Appellees' motion for partial summary judgment was to obtain favorable liability findings on the claims that they had alleged against Appellant. To prove a breach of contract claim, the plaintiff must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach. *See Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied). Here, to show their entitlement to a liability finding as a matter of law on their breach of contract claim, Appellees were only required to conclusively establish the first three elements noted above because, if their motion was granted, the resolution of the fourth element would be reserved for and determined at trial.

Appellees asserted in their motion, and alleged in their pleadings, that (1) they are the surface owners and mineral executory right holders of real property consisting of approximately 175.28 acres in Jones County (the property); (2) the property is the subject of an oil and gas lease dated March 29, 2017 that they executed with Supreme Energy; (3) Appellant is the successor-in-interest and/or the assignee of Supreme Energy; and (4) the March 29, 2017 lease imposed certain duties and obligations on the lessee (Appellant) including (a) releasing the acreage if lessee ceased continuous drilling operations as defined in the lease and (b) maintaining and repairing the surface as defined in the addendum to the lease. According to Appellees, Appellant breached the duties and obligations imposed by the lease in the following ways:

- Although Appellant has ceased continuous drilling operations for more than sixty (60) consecutive days, Appellant refused to release the unused acreage to Appellees.

5

- Appellant failed to provide the accounting required in the Addendum.

- Appellant caused damage to existing roads on the property and failed to repair same. As a result, Appellees repaired the roads at their own expense.

- Appellant failed to bury pipelines below plow depth, which interfered with Appellees' surface use of the property.

- Appellant caused and failed to secure pits on the property, which created a dangerous condition on the property and resulted in the death of at least one of Appellees' cattle. In addition, Appellant failed to properly remediate the pits after discontinuing use of same.

- Appellant failed to fence and/or secure equipment on the property, which created a dangerous condition on the property.

- Appellant created other dangerous conditions on the property by allowing oil to leak continuously from a pump jack, leaving unused pipe strewn about the property, allowing various leaks to occur and continue in unburied pipelines, and failing to bury electrical lines.

To determine whether Appellant's alleged conduct constitutes a breach of the March 29, 2017 lease, it is necessary to ascertain (1) the scope of the March 29, 2017 lease, (2) what operations the March 29, 2017 lease applies to, and (3) whether the damages claimed by Appellees were the result of operations associated with the March 29, 2017 lease.

First, the March 29, 2017 lease covers "175.28 acres of land out of Section 19, Block 2, S. P. Ry Co. Survey, Jones County, Texas . . . **SAVE AND EXCEPT 40 acres** described in Exhibit 'A' attached hereto and incorporated herein for all purposes." (Emphasis added). Exhibit "A" states:

SAVE AND EXCEPT Being 40 acres out of Section 19, Block 2, SP RR Company Survey, Abstract 341, Jones County, Texas around the Patton #1 Well . . . [t]he 40 acres set forth above is the 40 Acre tract that is held by production as a proration unit ("40 Acre Proration Unit") as described in Paragraph 1 of the Addendum to Oil, Gas and Mineral Lease dated May 30, 2014 from Lloyd and Sherity Meeks to Supreme Energy Company, Inc. as recorded in Volume 394, Page 37 of the Official Public Records of Jones County, Texas ("the First Meeks Oil, Gas and Mineral Lease"). The First Meeks Oil, Gas and Mineral Lease

is still in full force and effect but only insofar as is described as the 40 Acre Proration Unit.

Thus, the provisions of the March 29, 2017 lease (the Second Meeks' Lease) only apply to new exploration and drilling operations that would occur on the 135.28 acres identified in that lease, but not to such operations that would occur on the excepted 40 acres identified in the May 30, 2014 lease (the First Meeks' Lease).

Appellees argue on appeal that the Second Meeks' Lease encompasses operations that occur on the entire 175.28 acreage. According to Appellees, this is so because the catchall clause in the lease provides that "[t]his is a Lease in gross and not by the acres and the bonus money paid shall be effective to cover all such lands irrespective of the number of acres they contained, and the lands included within the terms of this Lease are estimated to comprise 175.28 acres, whether they actually compromise more or less." However, when interpreting the language of an oil and gas lease, "[w]e examine the entire lease and attempt to harmonize all its parts, even if different parts appear contradictory or inconsistent, and we presume that the parties to a lease intended every clause to have some effect." *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 448 S.W.3d 169, 175 (Tex. App.— Eastland 2014), *aff'd*, 554 S.W.3d 586 (Tex. 2018) (citing *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002)). Thus, we attempt to give effect to all the provisions of the lease so that no provision will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

We do not construe this catchall clause in the manner advanced by Appellees because doing so would render the "save and except" clause meaningless. Further, the 40 Acre Proration Unit is covered by the First Meeks' Lease which remained active because of production when the Second Meeks' Lease was executed. As such, because the 40 Acre Proration Unit was unavailable for leasing under the Second

Meeks' Lease, this catchall clause cannot act to bring the save and excepted 40 acres within the scope of that lease.

Next, we must determine whether the damages clause contained in the addendum to the Second Meeks' Lease was breached during the operations that occurred under that lease. The damages clause that Appellees claim was breached states "Lessee shall pay the Lessors for all damages *caused by Lessee's operation hereunder*." (Emphasis added). This clause specifically limits the damages to be recovered to those that resulted from *operations* that occurred under the Second Meeks' Lease. Therefore, as the summary judgment movant, it was Appellees' burden to conclusively show that the damages they alleged and sought resulted from *operations* that occurred under the Second Meeks' Lease, not the First Meeks' Lease.

Appellees' summary judgment evidence references the damages that the surface allegedly sustained. But this evidence does not distinguish whether the damages resulted from operations that occurred on and were related to the Second or the First Meeks' Lease, or which tract of land was affected by Appellant's operations. Moreover, Appellees' summary judgment evidence does not identify, nor does it provide information from which we can deduce, the location of the property that was allegedly damaged—within or outside the boundary of the 40 Acre Proration Unit—or which of the three wells—Patton #1, #2, or #3[1]—caused the claimed damages. Instead, Appellees' summary judgment evidence simply refers to the various damages occurring on "the property" or "throughout the leased property." As such, there is no summary judgment evidence from which the trial

---

[1]The summary judgment evidence shows that there are three wells located on the 175.28 acres—Patton #1, #2, and #3. Patton #1 is located within the 40 Acre Proration Unit and thus under the First Meeks' Lease. The locations of Patton #2 and #3 are not identified in the summary judgment evidence. Nor is there summary judgment evidence from which we can ascertain the locations of Patton #2 and #3.

court could have identified and determined, as a matter of law, the specific property that was affected by Appellant's operations and the damages that allegedly resulted from the operations under the Second Meeks' Lease. Appellees also did not submit the First Meeks' Lease as summary judgment evidence.[2] Therefore, Appellees failed to meet their summary judgment burden on their breach of contract claim. To the extent that the trial court granted Appellees' motion for partial summary judgment on that basis, the trial court erred.

Appellees also moved for partial summary judgment on their trespass-to-try-title claim. To prevail on this claim, Appellees were required to establish superior title by showing one of the following: (1) a regular chain of conveyances from the sovereign; (2) superior title out of a common source; (3) title by limitations; or (4) unabandoned prior possession of the land. *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 728 (Tex. App.—Eastland 2011, pet. denied). In support of their trespass-to-try-title claim, Appellees submitted as summary judgment evidence the Second Meeks' Lease, which includes the following continuous drilling operations clause:

> Upon cessation of continuous drilling operations, all acreage and depths above specified not then included in proration units upon which a well has been completed and is then capable of producing oil or gas in commercial quantities, shall be forfeited and all rights thereto shall revert ipso facto to Lessor. In this regard, within thirty (30) days after a partial termination of this lease, as provided herein, Lessee shall execute and deliver to Lessor a recordable release of this lease as to all

---

[2]The First Meeks' Lease was submitted to us in a supplemental clerk's record. However, the First Meeks' Lease was not filed with the trial court until November 18, 2022, a year after the trial court signed its final judgment and ten months after Appellant perfected this appeal. We may not consider the contents of a supplemental clerk's record if the contents were not before the trial court prior to it signing the final judgment. *See Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991) ("The rule has long been that evidence not before the trial court prior to final judgment may not be considered in a writ of error proceeding."); *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex. 1984) (declining to consider evidence on appeal that was not before the trial court at the time it granted a motion for summary judgment).

lands and depths, save and except the acreage and depths allocated to each producing proration unit, in accordance with the terms hereof.

Continuous drilling operations is defined in the lease as:

[T]he drilling of additional wells upon the leased premises after the expiration of the primary term of this lease without a lapse of more than sixty (60) days between the completion of one well, as a commercial producer or abandonment of the same as a dry hole, and the commencement of operation for the drilling of the next succeeding well, until all proration units permitted by the Texas Railroad Commission, or other government authority, upon the premises have been drilled.

Appellees also submitted the affidavit of Lloyd Meek in which he states that Appellant was no longer engaged in continuous drilling operations as defined in the lease and that only one of the three wells located on the property was producing. This summary judgment evidence is sufficient to initially establish Appellees' entitlement to summary judgment on their trespass-to-try-title claim. As such, the burden shifted to Appellant to present evidence that would preclude the grant of summary judgment on this claim in favor of Appellees.

In its response to Appellees' motion, Appellant submitted a Release of Oil, Gas, and Mineral Lease in which Appellant released its rights under the Second Meeks' Lease and another lease, save and except the proration unit surrounding the Patton #2, which encompassed 10 acres. Appellant also submitted a production report that detailed the monthly production of the Patton #2.

The relief requested by Appellees for their trespass-to-try-title claim was a recordable release of the Second Meeks' Lease, save and except the acreage and depths allocated to each producing proration unit. Appellant, in its response, met its summary judgment burden when it presented the recordable release that Appellees had requested. Therefore, to the extent that the trial court granted partial summary judgment on Appellees' trespass-to-try-title claim, it erred because Appellees received the relief that they requested.

Based on the record before us, we conclude that Appellees did not conclusively establish that they were entitled to favorable liability findings on the claims they alleged against Appellant. Therefore, the trial court erred when it granted Appellees' motion for partial summary judgment. Accordingly, we sustain Appellant's first issue on appeal.

Because our holding on this issue is dispositive of this appeal, we need not address Appellant's second issue. *See* TEX. R. APP. P. 47.1.

## III. *This Court's Ruling*

We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.[3]


W. STACY TROTTER

JUSTICE


May 11, 2023

Panel consists of: Trotter, J.,
Williams, J., and Wright, S.C.J.[4]

Bailey, C.J., not participating.

---

[3]Because liability is contested, and the amount of damages sought by Appellees remains in dispute, the trial court's liability *and* damages determinations must be remanded for a new trial. *See* TEX. R. APP. P. 44.1(b).

[4]Jim. R. Wright, Senior Chief Justice (Retired), Court of Appeals, Eleventh District of Texas at Eastland, sitting by assignment.