**Opinion filed February 13, 2025**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-23-00243-CV**

_____

**ROBERT SEAGER, Appellant**

**V.**

**ROBERT LYNN FRY, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV2102049**

**O P I N I O N**

This appeal concerns the proper title to certain land in Brown County, as well as the propriety of attorney's fees awarded under the Uniform Declaratory Judgments Act (UDJA). Appellant, Robert Seager, and Appellee, Robert Lynn Fry,[1] own adjoining property. Seager filed a trespass to try title suit against Fry alleging superior title to an approximately twenty-two-acre strip of land that is located on the boundary of their adjoining property. *See* TEX. PROP. CODE ANN. § 22.001 (West

---

[1]In several of his motions and briefs before the trial court, Fry states that his name is "Bobby Lynn Fry" and that he is improperly named in this lawsuit as "Robert."

2014).  Seager later amended his petition to join a declaratory judgment claim, in which he requested a declaration "confirming" that the disputed property is included in his chain of title "by operation of the strip-and-gore doctrine."  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003(a), 37.004(a) (West 2020).  Fry filed no-evidence and traditional motions for summary judgment challenging Seager's claims.  After a hearing, the trial court granted Fry's motions and awarded him attorney's fees.

In two issues, Seager contends that the trial court (1) erred when it granted summary judgment in favor of Fry, and (2) abused its discretion when it awarded attorney's fees to Fry under the UDJA.  We affirm in part, and we reverse and render in part.

I. *Factual and Procedural Background*

The tract at issue is labeled 73798 in the image below:



In support of his trespass to try title claim, Seager relied on a gift deed that conveyed to him the land adjoining Fry's; this deed states that the property to be conveyed is "All Grantor's interest in that property described in **Exhibit A.**" The property description of the tract that is contained in Exhibit A states: "138 acres, more or less, being all of the E. H. Estes Survey . . . and described by metes and bounds as follows . . . containing in said tract 160 acres, more or less, *less a strip on the East side of said tract cut off by an older survey*." (Emphasis added). This recitation is consistently found in the deeds that are recorded throughout Seager's chain of title. For example, the two most recent deeds that preceded the gift deed in Seager's chain of title contain the same description. Each deed describes the same tract as the property described in a 1901 deed in Seager's chain of title, which also states that a portion of the land in the Estes survey had been cut off by an older survey and was thus excluded from its conveyance.

By contrast, Fry's chain of title shows that his familial predecessors-in-interest acquired possession of the disputed property by warranty deed in 1943. The 1943 deed describes the conveyed land by metes and bounds, and the described land encompasses the disputed property. Fry's 1998 partition deed similarly describes the disputed property as a part of the 1943 conveyance.

Seager filed his original petition, in which he asserted his trespass to try title claim against Fry, on February 19, 2021. On February 6, 2023, Fry filed a no-evidence motion for summary judgment contending that there was no evidence that Seager had record title to the disputed property. The trial court set a hearing on this motion for March 20. On March 13, Seager moved to continue the hearing so that he could obtain a patent survey to identify the precise location of the disputed property as it related to the metes and bounds description contained in his deed—which he later obtained from Maxey Sheppard. The trial court granted Seager's motion and reset the summary judgment hearing for July 17. On June 23, Fry filed

3

a traditional motion for summary judgment alleging that the undisputed evidence proves that Seager lacks record title and, alternatively, that Seager's claims are barred by limitations and adverse possession. The trial court also set this motion for hearing for July 17.

On July 10, Seager filed his second amended petition and asserted a new theory of relief: that the "strip and gore doctrine" applied to the disputed property. Sheppard's survey was attached to Seager's amended petition. In his survey, Sheppard stated that although the disputed property was omitted from the metes and bounds description of Seager's property in his chain of title, this was done so erroneously. Specifically, the 1896 warranty deed to S.B. Byrd, Seager's predecessor-in-interest, with which the Sheppard survey begins, recites the conveyance as "160 acres, more or less, less a strip on the East side cut off by an older survey." The deeds in Seager's chain of title—including his own gift deed— echo this purportedly erroneous recitation. Based on Sheppard's survey, Seager alleged in his amended petition that "due to an erroneous survey completed in the late 19th century, the Property was mistakenly omitted from the legal description in [his] chain of title." Further, Seager contended that the "strip and gore doctrine" required the trial court to presume that the grantor's intent was to convey the strip of land. As such, he requested a declaratory judgment to declare that the disputed property was included in his chain of title by operation of the doctrine.

Also on July 10, Seager filed his original response to Fry's traditional motion for summary judgment and contended that the motion should be denied because, *inter alia*, Fry failed to address Seager's newly asserted claim for declaratory relief under the "strip and gore doctrine." Seager also contended that Fry's argument that Seager's claims were barred by limitations should fail because it was based on a previously unpled affirmative defense.

4

The next day, Fry filed his first amended answer, which joined the previously unpled affirmative defense of limitations. On July 14, Fry filed a reply brief in support of his no-evidence and traditional summary judgment motions. In his reply, Fry addressed Seager's assertion for declaratory judgment relief via the "strip and gore doctrine" and argued that this doctrine did not apply to Seager's asserted claims.

At the July 17 summary judgment hearing, Seager argued[2] that Fry's limitations defense was untimely and improper because Seager did not receive notice of it until Fry filed his amended answer on July 11. Following the hearing, Fry's counsel sent a letter to the trial court on July 19 in which he suggested that the trial court treat Fry's reply brief and counsel's letter—which addressed Seager's newly asserted declaratory judgment claim via the "strip and gore doctrine"—as Fry's supplemental motion for summary judgment. Fry's counsel further suggested that, in doing so, the trial court should indicate an intent to rule on the issues raised by the parties by submission at least twenty-one days from the date of counsel's letter. According to Fry's counsel, this extension of the deadlines would "eliminate any argument that the summary judgment did not properly address the strip and gore doctrine and would also cure any objection to [Fry's] alleged late filing of the affirmative defense of limitations," the filing deadline for which was "seven days or more before the submission date." Attached to counsel's letter was: (1) a letter to Seager's former counsel (who passed away during the pendency of the litigation) dated May 5, 2021, which stated, *inter alia*, that evidence of Fry's adverse possession of the disputed property existed; (2) a letter to Seager's current counsel, dated June 13, 2022, with the previous letter attached; and (3) an affidavit by Fry's counsel in support of Fry's request for attorney's fees under the UDJA.

---

[2]The record on appeal does not contain a transcript of the hearing, but neither party disputes that Seager raised this argument there.

Counsel for Seager responded and sent a letter to the trial court later that same day and objected that neither the substance of Fry's counsel's letter nor the documents attached to it should be considered by the trial court because Fry and his counsel were attempting to supplement or amend Fry's summary judgment motions and supporting evidence after the summary judgment hearing had adjourned. Seager's counsel further objected contending that he needed additional time to pursue discovery regarding Fry's limitations defense because the letter from Fry's counsel to him and Seager's former counsel that discussed the application of adverse possession was not a pleading and therefore did not provide proper notice of that defense to Seager. Seager's counsel also raised several objections to Fry's claim for attorney's fees.

In a letter ruling dated July 24, the trial court informed the parties that it would treat Fry's reply brief and July 19 letter as supplementations to his motions for summary judgment. The trial court accordingly extended the submission deadlines by setting a hearing on all summary judgment filings, which were to be considered by submission only, for August 31. Including the submission date, this extension gave the parties an additional thirty-nine days to ensure that all summary judgment filings and evidence were timely submitted to the trial court.

Seager filed his second amended response to Fry's traditional motion for summary judgment and addressed the "new" issues discussed above. Seager renewed his objections to Fry's contentions; Seager also objected to the trial court's determination to treat Fry's reply brief and his counsel's July 19 letter as supplemental motions, the trial court's decision not to reopen the discovery period, and its consideration of the evidence attached to the July 19 letter. In addition to renewing his arguments based on the "strip and gore doctrine," Seager addressed the merits of Fry's adverse possession defense and contended that Fry had failed to

establish each element of the defense as a matter of law.  Fry filed a supplemental reply that briefly addressed each of Seager's arguments in turn.

After the new submission deadline had passed, the trial court signed an order that granted Fry's no-evidence and traditional motions for summary judgment, dismissed Seager's claims, and awarded attorney's fees to Fry in the amount of $11,580, together with conditional fees for any subsequent appellate review.

## II.  *Standard of Review – Summary Judgment*

We review a trial court's grant of summary judgment de novo.  *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018).  Generally, when parties move for summary judgment on both traditional and no-evidence grounds, we first consider the no-evidence motion.  *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019).  If the nonmovant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent that it addresses the same claim.  *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

We review a no-evidence motion for summary judgment under the same legal sufficiency standard that we use when reviewing the grant of a directed verdict.  *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).  Pursuant to this standard, and "[t]o defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements."  *KMS Retail*, 593 S.W.3d at 181; *see* TEX. R. CIV. P. 166a(i).  Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion of a fact."  *KMS Retail*, 593 S.W.3d at 181 (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *ConocoPhillips*

*Co. v. Koopman*, 547 S.W.3d 858, 865 (Tex. 2018). For a trial court to grant a defendant's traditional motion, the defendant must conclusively negate at least one essential element of the cause of action being asserted by the plaintiff or conclusively establish each element of a defense or an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If the movant meets its summary judgment burden, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail*, 593 S.W.3d at 181. We credit favorable inferences to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

III. *Analysis*

A. *No Complaints Asserted Regarding Procedural Irregularities*

Although the post-submission letters that counsel for the parties sent to the trial court, Seager's objections to Fry's July 19 letter, and the trial court's subsequent letter ruling—where it determined that it would consider the arguments raised by the parties in their letters—may present some procedural irregularities, Seager does not challenge the trial court's rulings on these matters on appeal. Rule 166a(c) of the

Texas Rules of Civil Procedure requires that, except on leave of court, a motion for summary judgment and any supporting affidavits shall be served and filed at least twenty-one days before the time specified for the hearing. TEX. R. CIV. P. 166a(c); *see also PDG, Inc. v. Abilene Village, LLC*, 668 S.W.3d 947, 952 (Tex. App—Eastland 2023, pet. denied). Rule 166a(c) further provides that any "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." *Id.* R. 166a(c).

In his reply brief, Fry requested that if the trial court accepted Seager's argument that his newly asserted theory of recovery under the "strip and gore doctrine" applied—which Seager had presented as a new and independent cause of action under the UDJA—the trial court should then treat Fry's reply brief, and necessarily his counsel's July 19 post-submission letter, as an amended or supplemental motion for summary judgment as to this claim. Fry also requested an opportunity to submit a claim for attorney's fees under the UDJA in the event the trial court chose to consider Seager's claim under the UDJA.

A court should construe motions based on their substance, rather than their caption or title, to determine what relief is sought. *See SM Energy Co. v. Union Pac. R.R. Co.*, 652 S.W.3d 830, 836 (Tex. App.—Eastland 2022, pet. denied); *Aaron v. Fisher*, 645 S.W.3d 299, 310 (Tex. App.—Eastland 2022, no pet.); *Sierra Club v. Tex. Comm'n on Envtl. Quality*, 188 S.W.3d 220, 222 (Tex. App.—Austin 2005, no pet.) ("[M]otions are judged by their substance rather than their titles."). Here, although Fry's subsequent filing—his reply brief—was not titled as a "supplemental motion for summary judgment," based on the brief's substance, the trial court could have reasonably construed it as a supplemental motion as Fry requested.

The July 19 post-submission letter submitted by Fry's counsel urged the trial court to consider his reply brief, as well as the letter itself, as a supplemental motion for summary judgment. In his letter, Fry's counsel reiterated arguments that he had

9

presented in his reply brief; he also attached two items to his letter: (1) a letter from him to Seager's former attorney which Fry contended provided notice of his adverse possession defense to Seager several years prior, and (2) an affidavit by him in support of Fry's request for attorney's fees under the UDJA. Over Seager's objection, the trial court agreed with Fry's requests and extended the filing deadlines to ensure that all issues were timely submitted before it ruled on Fry's motions for summary judgment.

We note that Seager objected to the post-submission letter that Fry's counsel sent to the trial court, the requests contained in it, and the documents attached to it; however, he does not challenge on appeal the trial court's rulings to consider these matters. He simply challenges the merits of Fry's argument regarding the applicability of the "strip and gore doctrine" as well as Fry's affirmative defense of limitations through adverse possession. Nevertheless, we have discussed the above procedural issues concerning the disposition of Fry's motions for summary judgment because, as set forth below, they are relevant to whether Fry presented one of his legal arguments to the trial court for consideration.

B. *Seager Defeated Fry's No-Evidence Motion and Fry Failed to Negate an Element of Seager's Theory of Recovery Via the "Strip and Gore Doctrine"*

In his first issue, Seager contends that the trial court erred when it granted Fry's motions for summary judgment because: (1) Seager produced at least a scintilla of evidence to establish his title to the disputed property; (2) Fry failed to negate an element of Seager's claims for trespass to try title and request for declaratory judgment; and (3) Fry failed to prove his adverse possession defense. We agree on the first point and that Fry failed to negate an element of Seager's theory of recovery under the "strip and gore doctrine." However, we conclude that Fry is entitled to summary judgment under his limitations and adverse possession defenses.

In most cases, when title to real property is in dispute, a trespass to try title action is "*the* method for determining title to . . . real property." *Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021) (quoting *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004)); *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 89 (Tex. App.—Eastland 2021, no pet.); *see* PROP. § 22.001.  To prevail in a trespass to try title action, the plaintiff has the burden to prove the title he claims to the disputed property by: (1) a regular chain of conveyances from the sovereign; (2) a superior title out of a common source; (3) title by limitations (i.e., adverse possession); or (4) prior possession that has not been abandoned.[3]  *See MEI Camp Springs*, 623 S.W.3d at 90 (citing *Brumley*, 616 S.W.3d 833).  Further, the plaintiff's claim must rest on the strength of his title, not the weakness in his opponent's title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994) (citing *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982)).  Therefore, the focus is *title* to the disputed property.

It is undisputed that Fry, not Seager, has possession of the disputed property. Therefore, to prove his trespass to try title claim, Seager seeks to establish either (1) a regular chain of title by conveyances from the sovereign to him or (2) a superior title from a common source.  Seager's title claim to the disputed property rests on the application of the "strip and gore doctrine" because his deed and the deeds in his chain of title do not purport to convey the disputed property.

---

[3]Also, notwithstanding Section 22.001 of the Property Code, a person claiming an interest under a deed may obtain a determination under the UDJA when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.  CIV. PRAC. & REM. § 37.004(c); *see Brumley*, 616 S.W.3d at 833 n.36 (recognizing that the legislature amended the UDJA to expressly provide that a claimant may sue for this relief) (citing *Martin*, 133 S.W.3d at 267).  Here, Seager does not argue that the matter before us presents a boundary line exception under the UDJA.  *See Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no pet.) ("The proper test for determining if the case is one of boundary is as follows: If there would have been no case but for the question of boundary, then the case is necessarily a boundary case even though it might involve questions of title.") (quoting *Plumb v. Stuessy*, 617 S.W.2d 667, 669 (Tex. 1981)).

The "strip-and-gore doctrine" generally provides:

> Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip.

*Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 909 (Tex. 2017) (quoting *Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940)); *see Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 106 (Tex. App.—Eastland 2010, no pet.) (citing *Angelo v. Biscamp*, 441 S.W.2d 524, 526 (Tex. 1969)). The presumption is intended to apply to relatively narrow strips of land that are nominal in size and value when compared to the adjoining tract that the grantor conveyed. *Escondido Servs.*, 321 S.W.3d at 106 (citing *Angelo*, 441 S.W.2d at 526–27). Its application is "highly policy driven" and "discourages title disputes and prolonged litigation—providing certainty in land titles—and encourages the use and development of real property." *Green v. Chesapeake Expl., L.L.C.*, No. 02-17-00405-CV, 2018 WL 6565790, at *3 (Tex. App.—Fort Worth Dec. 13, 2018, no pet.) (mem. op.) (citing *Angelo*, 441 S.W.2d at 526–27).

Thus, to establish that the "strip and gore doctrine" applies to a disputed strip of property, the strip must (1) be small in comparison to the land conveyed, (2) be adjacent to or surrounded by the land conveyed, (3) belong to the grantor at the time of conveyance, and (4) cease to be of benefit or importance to the grantor of the larger tract. *See Escondido Servs.*, 321 S.W.3d at 109 (quoting *Angelo*, 441 S.W.2d at 527).

On appeal, Seager contends that he produced sufficient evidence—more than a scintilla—to survive Fry's no-evidence motion for summary judgment and that Fry

failed to produce sufficient evidence to shift the burden to Seager to defeat Fry's traditional motion for summary judgment on this point. We agree.

Seager offered Sheppard's survey and his accompanying affidavit, in which Sheppard identified the disputed property as a narrow strip of approximately twenty-four acres that adjoined Seager's land. In his survey, Sheppard explains that some confusion in certain surveys that were performed as early as 1878 and 1896 led to the allegedly erroneous legal descriptions recited in the deeds in Seager's chain of title that contained the exception from the Estes survey: "less a strip on the East side of said tract cut off by an older survey." This constitutes more than a scintilla of evidence to support Seager's title claim through the "strip and gore doctrine" presumption and thus precludes the grant of Fry's no-evidence summary judgment on this point.

On the same point, Seager further asserts that Fry did not offer any competent summary judgment evidence to establish that he is entitled to the grant of his traditional motion for summary judgment. This is so because Fry sought to establish that the "strip and gore doctrine"—Seager's only theory of recovery—does not apply in these circumstances as a matter of law. In response to Fry's arguments, Seager contends that (1) the doctrine applies if the disputed strip satisfies the required elements—and not whether a deed, such as Seager's deeds at issue here, contains an unambiguous legal description that omits the disputed property, and (2) if the disputed strip otherwise satisfies the required elements, the doctrine applies unless the grantor plainly and specifically *reserves* the strip for himself.

In support of the first part of his argument, Seager relies heavily on the Second Court of Appeals' decision in *Green*. *Green*, 2018 WL 6565790, at *3–4. We agree with Seager that *Green* supports his contention. In *Green*, the court explained that, in its view, the supreme court has made clear that the doctrine applies when the evidence shows:

13

(1) the adjoining land is of a certain character—relatively narrow, small in size and value in comparison to the expressly conveyed land, and no longer of importance or [benefit] to the grantor of the larger tract, (2) the adjoining land was not included in the property description in the deed at issue, and (3) no other language in the deed indicates that the grantor intended to reserve an interest in the adjoining land. *No additional showing is needed*.

*Id.* at *4 (emphasis added) (internal citations omitted); *see Angelo*, 441 S.W.2d at 526–27; *Strayhorn v. Jones*, 300 S.W.2d 623, 638 (Tex. 1957); *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 799 (Tex. App.—Eastland 2002, pet. denied).

The court in *Green* addressed an argument raised in the supreme court's *McKee* decision, in which it held that the doctrine did not apply, at least in part, because the deed in question contained an unambiguous metes and bounds description that omitted the adjoining land. *Green*, 2018 WL 6565790, at *3 (citing *McKee v. Stewart*, 162 S.W.2d 948, 950 (Tex. 1942)). Later, in *Strayhorn*, the supreme court rejected the argument that the doctrine could not apply because the disputed adjoining land had been omitted from the unambiguous field notes' description in the deed. *Strayhorn*, 300 S.W.2d at 638. Instead, it held that the doctrine may apply only when the specific strip is not included in the field notes of the conveyance, otherwise it would pass under the conveyance. *Id.* In *Green*, the court reasoned that *Strayhorn* implicitly overruled the holding in *McKee*—that the doctrine applies only when there is an ambiguity in a deed's property description—and ultimately rejected "any argument that the strip-and-gore doctrine cannot apply . . . because the deed contains a specific metes and bounds description that fails to include [the disputed property]." *Green*, 2018 WL 6565790, at *3, 5.

We find the rationale in *Green* to be persuasive and applicable to this case. Thus, we agree with Seager that the "strip and gore doctrine" applies if the disputed strip satisfies the required elements, and it is of no consequence if a deed, such as in

14

this case, contains an unambiguous legal description that omits the disputed property.

In support of the second part of his argument, Seager contends that if the disputed strip otherwise satisfies the doctrine's required elements, the doctrine applies unless the grantor plainly and specifically *reserves* the strip for himself.[4] Fry argues that since both reservations and exceptions can be deduced from the grant in a deed, the issue is not whether the land was reserved, but rather whether the predecessor-grantors expressed an intent that is contrary to a presumption of conveyance. Because the legal descriptions in the deeds in Seager's chain of title all specifically exclude the disputed strip, Fry reasons that the grantors clearly did not intend to convey this strip of land. Fry argued in the trial court below that the doctrine applies only if an ambiguity is created by omission, and here the strip of land was not omitted, but excluded. Fry also asserts that even if the legal descriptions were based on erroneous surveys or confusion about the meaning of older surveys, providing a false reason for an exception from a grant does not operate to alter or eliminate the interest excepted, nor does it operate to pass the excepted interest to the grantee. *See Pich*, 302 S.W.2d at 648.

*Cantley* holds that the doctrine applies "unless it clearly appears in the deed, by plain and specific language, that the grantor intended to *reserve* the strip." *Cantley*, 143 S.W.2d at 915 (emphasis added). In many cases, including *Green*, courts have echoed the language expressed in *Cantley*, including the word "reserve." *See, e.g.*, *Angelo*, 441 S.W.2d at 526; *Green*, 2018 WL 6565790, at *4; *Escondido Servs.*, 321 S.W.3d at 106; *Moore*, 71 S.W.3d at 799. Although courts have also at times referred to this aspect of the doctrine in broader terms, these references have

---

[4] "Although an 'exception' can refer to any 'mere exclusion from the grant,' a 'reservation' must 'always be in favor of and for the benefit of the grantor.'" *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018) (quoting *Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957)).

not typically constituted a meaningful departure from the use of the reservation language. *See Escondido Servs.*, 321 S.W.3d at 106 ("[The presumption applies] unless [it] is rebutted by the express terms of the grant. . . . A legal description that defines the property conveyed as extending only to the boundary of the highway does not expressly rebut the presumption that the conveyance extends to the center of the highway."). Indeed, in *Cantley*, the deed described the land being conveyed by using an adjoining narrow strip as a boundary. *See Cantley*, 143 S.W.2d at 915. The court held that a fee in the narrow strip was not explicitly reserved and thus the strip was no longer of use to the grantor, therefore, the narrow adjoining strip was conveyed to the grantees with the other conveyed land. *Id.*

Based on the holding and reasoning in *Green*, as well as the need for a clear *reservation* by the grantor as expressed in *Cantley*, we also agree with Seager's second contention and conclude that the legal description in his deed and the deeds in his chain of title do not negate the applicability of the "strip and gore doctrine" to Seager's trespass to try title claim in this instance.

Fry contends that Seager failed to show that the land at issue was (1) relatively narrow, or (2) of no benefit or importance to the grantor at the time of the grant. Seager responds that Fry did not raise these arguments in the trial court and thus cannot raise them for the first time on appeal. We disagree with Seager because although Fry's argument that challenged the application of the "strip and gore doctrine" focused on the language in the deed's legal description that excluded the disputed property, Fry's reply brief—which the trial court construed as a supplemental motion for summary judgment—stated: "Setting aside for now the obvious defect in this argument, which is that we are dealing with, 22 acres of land shaped as a square, which is clearly not small in comparison to the land conveyed, nor insignificant from anyone's viewpoint, the [doctrine] simply does not apply." We conclude that this argument was sufficient to satisfy the general requirements to

preserve a complaint for appellate review because the complaint was presented to the trial court in a supplemental motion for summary judgment, and the trial court ultimately ruled on Fry's motions. *See* TEX. R. APP. P. 33.1(a).

Though his complaint was preserved for our review, we disagree with Fry's arguments in support of his complaint. Fry did not present any summary judgment evidence to conclusively negate either element of the "strip and gore doctrine" and thus he failed to shift the burden to Seager to raise a genuine issue of material fact regarding either element. *See* TEX. R. CIV. P. 166a(c), (i). For example, although he acknowledges that it is typically a question of fact, Fry asserts that the strip, which he characterizes as "388.05 feet wide and 2,221.2 feet long," is simply not a relatively narrow strip of land, and thus no reasonable juror could conclude that it is. To the contrary, the doctrine contemplates that the strip must be *relatively* small *in comparison to* the land to be conveyed in the deed. *See Angelo*, 441 S.W.2d at 526–27; *Escondido Servs.*, 321 S.W.3d at 109; *Green*, 2018 WL 6565790, at *4. As shown in the image that depicts the disputed tract and the respective parties' adjoining land, the strip is relatively narrow and small in comparison to Seager's property. Moreover, as each of the deeds in Seager's chain of title recite, the conveyed property consists of approximately one hundred and thirty-eight acres, while the disputed strip consists of approximately twenty-four acres according to Sheppard's survey. Not only did Fry fail to present any summary judgment evidence on this point, his contention that the strip is not relatively narrow is negated by other summary judgment evidence.

Likewise, Fry summarily asserts that Seager failed to prove that the disputed strip was of no benefit or importance to the grantor at the time of the grant. Fry points to our decision in *Escondido* in which we determined that the plaintiff had satisfied its burden on this point by showing that the disputed tract was beneath a highway right of way and lacked the right of ingress and egress, which made it

a separate parcel of land and inherently undevelopable. *See Escondido Servs.*, 321 S.W.3d at 109. But in *Escondido*, summary judgment evidence was presented that the disputed property ceased to be of benefit or importance to the grantor at the time of the conveyance.[5] To the extent that Fry's no-evidence motion for summary judgment addressed this point via his supplemental motion, we agree with Seager that Sheppard's survey, which shows that the strip is surrounded by much larger parcels, constitutes more than a scintilla of evidence that the land was no longer of benefit or importance to the grantor. Moreover, and because the "strip and gore doctrine" applies here, we agree with Seager that Fry failed to conclusively negate the title element of Seager's trespass to try title claim.

As such, we conclude that: (1) the legal description in Seager's gift deed and the deeds in his chain of title do not render the "strip and gore doctrine" inapplicable to his claims; (2) Fry failed to negate either element of the "strip and gore doctrine," that is, that the land at issue was (a) relatively narrow, or (b) of no benefit or importance to the grantor at the time of the grant; and (3) Seager produced sufficient evidence to raise a genuine issue of material fact to support his arguments on both points.

C. *Fry is Entitled to Summary Judgment Based on His Affirmative Defense of Limitations and Defense of Adverse Possession*

However, and despite our holdings above, we conclude that the trial court properly granted summary judgment in favor of Fry on his asserted defenses. Fry contends, alternatively, that even if the "strip and gore doctrine" is applicable here, Seager's claims to recover the property are time-barred under the adverse possession statutes. Fry's chain of title shows that his predecessors came into possession of the

---

[5]Fry attached his affidavit and photographs of the disputed property and the improvements he has made on it to his traditional motion for summary judgment. However, the benefit or importance of the property to the grantor must be determined at the time of the conveyance, not by subsequent events. *Id.* at 110.

disputed strip in 1943 and have possessed it ever since. Thus, Fry argues that his continuous, uninterrupted possession of the land satisfies the requirements for adverse possession under either the five- or ten-year statute of limitations. *See* CIV. PRAC. & REM. §§ 16.025–.026 (West 2002 & Supp. 2024).

Under the five-year statute of limitations, a person must bring suit within five years after the date the cause of action accrues to recover real property that is held by another who, in peaceable and adverse possession, cultivates, uses, or enjoys the property, pays the applicable taxes due on the property, and claims the property under a duly registered deed. *Id.* § 16.025(a). The requirements under the ten-year statute of limitations are similar, except that the adverse possessor need not claim the property under a duly registered deed or pay applicable taxes on the property. *Id.* § 16.026(a). If an action for the recovery of real property is barred by an adverse possession limitations statute, "the person who holds the property in peaceable and adverse possession has full title, precluding all claims." *Id.* § 16.030(a).

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1); *Brumley*, 616 S.W.3d at 834; *Cowan v. Worrell*, 638 S.W.3d 244, 263 (Tex. App.—Eastland 2022, no pet.). Peaceable possession is the possession of real property that is continuous and uninterrupted by an adverse suit to recover the property. CIV. PRAC. & REM. § 16.021(3). Possession must be "actual, but also visible, continuous, notorious, distinct, hostile (i.e. adverse), and of such a character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (emphasis added) (quoting *Satterwhite v. Rosser*, 61 Tex. 166, 171 (1884)); *see Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006 (pet. denied) ("An adverse possession claim requires proof of six elements: (1) actual possession of the disputed property, (2) that is open

19

and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, (6) consistently and continuously for the duration of the statutory period."). The person "seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence." *Rhodes*, 802 S.W.2d at 645.

Here, Seager's arguments focus on whether Fry's possession was of such a character as to "indicate *unmistakably* an assertion of a claim of exclusive ownership." *See id.* (emphasis added). Fry's summary judgment evidence shows that (1) he has paid annual taxes due on the disputed strip since 1998, (2) he built a dam and tank on the disputed strip that was visible from Seager's adjoining property as well as the public road, (3) he constructed a 1900 square-foot residence on the disputed strip that was also visible from Seager's adjoining property as well as the public road, and (4) the disputed strip has been separated from Seager's adjoining property by a fence since at least 1955.

Seager challenges Fry's claim of right under his chain of title. Nevertheless, under any scenario, his argument would not defeat Fry's claim, but rather would merely relegate it to being subject to the ten-year statute of limitations, rather than the five-year statute. *See* CIV. PRAC. & REM. § 16.026(a). Thus, and irrespective of which statute applies, Seager's claim fails. Seager also argues that Fry did not prove that the fence which separates the parties' property is a "designed enclosure," and therefore a "casual fence," and that Fry's remaining summary judgment evidence does not establish adverse possession.[6] We need not address whether the fence is a "casual fence" or a "designed enclosure" because the "casual fence" doctrine applies

---

[6]When a person shows that a fence was erected as a hostile act (a "designed enclosure"), such an act alone commences the limitations period and may, without more, establish adverse possession. *See Rhodes*, 802 S.W.2d at 646. However, if a claimant cannot establish the purpose of a previously erected fence, it is a "casual fence," and adverse possession must be proved by other evidence. *See id.*; *McDonnold v. Weinacht*, 465 S.W.2d 136, 141–42 (Tex. 1971).

20

only when the sole claim of a right to ownership is through grazing. Here, Fry advances his claim based on his construction of the dam, tank, and residence on the disputed land, not by grazing. *McDonnold*, 465 S.W.2d at 142–43.

Finally, Seager contends that Fry's summary judgment evidence that he "cultivated, used, or enjoyed the property" is insufficient because he did not conclusively establish that Fry's use of the land was of such a character as would give the owner notice of the hostile nature of the claim. Seager does not dispute that Fry constructed a residence on the property; instead, Seager complains that Fry's affidavit does not specify precisely where on the disputed strip the residence was constructed, and that Fry's 1998 deed cannot provide constructive notice of Fry's adverse possession.

We are not persuaded by Seager's characterization. Fry's affidavit describes how in 1998, in connection with the division of the Fry family ranch after Fry's parents passed, he hired Michael Jack Needham to prepare a survey. Needham informed Fry that although the disputed strip was described from the George W. Hale survey, Needham believed that the land should be described by referencing the Estes survey. Needham then prepared the survey to include approximately twenty-one acres from the Estes survey. Fry refers to the disputed property as "acres in the Estes Survey" throughout the remainder of his affidavit. Thus, when Fry states in his affidavit that he constructed a dam, tank, and residence "in the Estes Survey" it is clear he is referring to the disputed strip. Fry also offered two other affidavits by James W. Brim, a local landowner, and Edwin Cox, a local businessman, who each attested that Fry, and his immediate predecessors (his parents), had openly, notoriously, and without interruption possessed the disputed strip to the exclusion of all others since at least 1961.

Seager asserts that these affidavits offer no evidence regarding the use of the property. He also contends that Fry's affidavit is fatally defective because Fry is not

a surveyor and has not offered any "real" evidence, other than conclusory statements, of the location of the tank or dam. Contrary to Seager's assertion, and as mentioned above, Fry's affidavit reasonably describes the disputed strip as being the location of the various construction projects that he completed.

Seager also asserts that the Needham affidavit[7]—which Fry references in his affidavit—is "replete with substantive errors," namely that Needham did not (1) attach any exhibits, and (2) demonstrate his personal knowledge of the facts stated in the affidavit. We need not address this point because Seager's summary judgment evidence—the Sheppard survey—refers to the Needham survey in its discussion of the disputed strip. Although the two surveys may disagree as to the proper boundary line between the parties' adjoining lands, they describe the same disputed land, and the Sheppard survey references the Needham survey when describing the disputed strip. Thus, according to the summary judgment evidence, there is no doubt about the disputed strip's location. And, as we have said, Fry's affidavit, which partially relies on the Needham survey's description of the location of the disputed strip, reasonably describes it as to the location of the various construction projects that he completed. As such, we conclude that Fry's affidavit is not fatally defective as Seager suggests.

Fry attested that he completed certain open and obvious construction projects on the disputed strip that were visible from the public road as well as from Seager's adjoining land. Fry recorded his deed in 1998 in the county records and has paid annual taxes on the disputed strip ever since. Based on this record, it is clear that

---

[7]The Needham *affidavit* differs from the Needham *survey* in that the affidavit was prepared in 2023 by Jim Needham, whereas the survey was prepared in 1998 by Michael Jack Needham, both of whom were employed by Needham Surveyors. Fry states in his affidavit that the legal description of the land in his 1998 partition deed was prepared by Michael Jack Needham in reliance on the 1998 survey. Both the deed and the survey are attached to Fry's traditional motion for summary judgment.

Fry and his predecessors have asserted an *unmistakable* claim of ownership to the disputed strip. *See Rhodes*, 802 S.W.2d at 645.

Based on the record before us, we conclude that Fry conclusively established each element of his defenses, and therefore he is entitled to judgment as a matter of law on his defenses of limitations and adverse possession. Therefore, the trial court did not err when it granted Fry's traditional motion for summary judgment on these defenses. Accordingly, we overrule Seager's first issue.

D. *Fry's Claim for Attorney's Fees*

In his second issue, Seager contends that the trial court abused its discretion when it awarded attorney's fees to Fry under the UDJA. Specifically, he argues that Fry failed to segregate his fees and that his counsel offered incompetent opinions about segregated fees.[8] Fry responds that no segregation of fees is necessary with respect to Seager's original trespass to try title claim and his assertion of a claim to recover real property under the UDJA because the two claims are ultimately the same and seek the same relief—that Seager has superior title and a right to possession to the disputed strip. Fry further responds that his counsel submitted an affidavit attesting to the segregation of the attorney's fees incurred in defending against Seager's title claims from the fees incurred in presenting Fry's defenses of limitations and adverse possession, and that nothing further is required.

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles in reaching its ruling, or if its ruling is not supported by legally or factually sufficient evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Further, the issue of segregation of fees and whether the claims in dispute are so intertwined

---

[8]Seager also argues that if we reverse the trial court's judgment on his substantive issue, we should also reverse on the attorney's fee issue.

that they cannot be separated, is a mixed question of law and fact that we review de novo. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–14 (Tex. 2006).

We agree with Fry that the nature of Seager's purported claim under the UDJA and his original asserted claim of trespass to try title are the same. "Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form." *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied); *see Brumley*, 616 S.W.3d at 833. A trespass to try title action and a declaratory judgment action are distinct statutory creations which serve different purposes. *See Lance v. Robinson*, 543 S.W.3d 723, 735–37 (Tex. 2018); *MEI Camp Springs*, 623 S.W.3d at 88 (citing *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 723–29 (Tex. App.—Eastland 2011, pet. denied)).

Under Section 22.001 of the Property Code, a trespass to try title action is the method of determining title to lands or other real property. *MEI Camp Springs*, 623 S.W.3d at 88 (citing PROP. § 22.001(a)). The prevailing party's remedy is title to, and possession of, the real property interest at issue. *Id.* (citing *Teon Mgmt.*, 357 S.W.3d at 723). Conversely, Section 37.004 of the Texas Civil Practice and Remedies Code provides that a person with rights under a deed, contract, or instrument "may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* (quoting CIV. PRAC. & REM. § 37.004(a)).

One of the most important procedural differences between the two causes of action is that attorney's fees are not available or recoverable in trespass to try title suits; however, trial courts have the discretion to award attorney's fees in declaratory judgment actions. *Id.* at 88–89 (citing *Teon Mgmt.*, 357 S.W.3d at 723); *see* CIV. PRAC. & REM. § 37.009. This distinction lies at the heart of the issue that is before us. Here, Seager sued Fry to obtain ownership to or a possessory right in the disputed strip, an action that is clearly under the umbrella of trespass to try title. *See Lance*,

24

543 S.W.3d at 736; *MEI Camp Springs*, 623 S.W.3d at 89. Thus, Seager's purported declaratory judgment claim must necessarily be construed as a trespass to try title claim. *See MEI Camp Springs*, 623 S.W.3d at 89–90; *Teon Mgmt.*, 357 S.W.3d at 727–28.

We conclude that attorney's fees are not recoverable in this suit because Seager's asserted declaratory judgment action should have been construed as a trespass to try title action. *See Teon Mgmt.*, 357 S.W.3d at 727–29 (sustaining the issue on recoverable attorney's fees). Consequently, the trial court abused its discretion when it awarded attorney's fees to Fry based on his request for fees under the UDJA. *See id.* Accordingly, we sustain Seager's second issue.

## IV. *This Court's Ruling*

The judgment of the trial court is affirmed in part and reversed and rendered in part. The portion of the trial court's judgment awarding Fry attorney's fees is reversed, and judgment is rendered that Fry take nothing on his claim for attorney's fees under the UDJA. In all other respects, the judgment of the trial court is affirmed.

W. STACY TROTTER
JUSTICE

February 13, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.